[No. 28751. Department Two. December 18, 1942.]

DONALD E. HODGES et al., *Respondents*, v. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION OF OMAHA, *Appellant*.[1]

*Preston, Thorgrimson, Turner, Horowitz & Stephan,* for appellant.

*Clarence J. Coleman,* for respondents.

SIMPSON, J.—Plaintiffs, as beneficiaries of an insurance policy issued to Leon Wilbur Hodges, instituted this action to collect the amount mentioned in the policy. The case was tried to a jury. At the conclusion of plaintiff's case, the defendant challenged the

[1]Reported in 131 P. (2d) 937.

legal sufficiency of the evidence to justify a verdict by the jury and moved for a dismissal of the action. The motion was denied. Defendant did not introduce evidence and the case was submitted to the jury, resulting in a verdict in favor of plaintiffs. Defendant presented motions for judgment n. o. v., or, in the alternative, for a new trial. These motions were denied. Judgment was entered upon the verdict and defendant has appealed.

The assignments of error are in overruling the challenge to the legal sufficiency of the evidence, in denying appellant's motion for nonsuit, in refusing appellant's request for an instructed verdict, in denying appellant's motion for judgment notwithstanding the verdict, and in entering judgment for respondents.

The facts, as presented to the jury, are these: October 31, 1940, appellant issued its certificate of insurance to Leon Wilbur Hodges. The insuring clause of the policy read:

"MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION
Omaha
(Herein called Association)

| "Monthly benefits | $30.00 |
| Maximum Monthly Benefits | $60.00 |
| Regular Death Benefit | $ 750 |
| Maximum Death Benefit | $1,500 |

"Hereby Insures LEON WILBER HODGES (Herein called the Insured) of City of GRANITE FALLS, State of Washington against loss of life, limb, sight or time, sustained or commencing while this policy is in force, resulting directly and independently of all other causes, from bodily injuries sustained during any term of this policy, through purely Accidental Means (Suicide, sane or insane, is not covered)."

Part "A" of the policy provided:

"If the Insured shall sustain bodily injuries, as described in the Insuring Clause, which injuries shall,

independently and exclusively of disease and all other causes, continuously and wholly disable the Insured from the date of the accident and result in any of the following specific losses within thirteen weeks, the Association will pay: For loss of Life $750.00. . . ."

The insured was an able-bodied man, fifty-five years of age, who had been engaged in road construction work. He was very fond of dancing and had been a member of a dancing club for two or three years. The dances were held once every two weeks and generally lasted from nine or nine-thirty in the evening until about midnight. Usually the insured continued to dance from the start until midnight. December 21, 1940, he attended one of the regular meetings of the club and, as usual, took part in all of the dances. During the later part of the evening, when he was dancing a fast fox trot, he said to his dancing partner "I have to quit, it is too much for me," and that his left side and shoulder hurt him. The insured then went to his home and told his son Donald of his condition. Donald Hodges took his father to the hospital, but just as they arrived, Mr. Hodges died. Dr. W. D. Smith, in answer to a hypothetical question, testified that Mr. Hodges died as the result of a coronary occlusion or blood clot, which means "a blocking of the arterial blood vessels." Dr. Smith also testified:

"It must have been a thrombosis or a thromba formed at the entrance to the coronary artery and the violent exercise of dancing increased the flow of blood and forced the clot that had formed there into the coronary artery and produced a complete block."

He testified further:

"Q. I will ask you to state whether or not if a layman might call it heart trouble, if this condition might be precipitated by an action or a strain? A. Yes."

Counsel for appellant indicated their contention in the following language:

"The insured, according to the undisputed evidence in the case, died of a heart attack which came on him while he was dancing. Nothing 'unforeseen,' 'unexpected,' or 'unusual' had occurred to bring on this attack. He was not over-exerting himself in the sense of doing anything different or taxing his strength any more than he had been doing regularly for a number of years."

The questions presented for consideration are: Did the death of the insured result from bodily injuries sustained through purely accidental means, and were the bodily injuries which caused the death of the insured sustained through accidental means independently and exclusively of disease?

This court has had occasion to consider questions of this nature in the following cases: *Horsfall v. Pacific Mut. Life Ins. Co.*, 32 Wash. 132, 72 Pac. 1028, 63 L. R. A. 425; *Carpenter v. Pacific Mut. Life Ins. Co.*, 145 Wash. 679, 261 Pac. 792; *Bjorklund v. Continental Cas. Co.*, 161 Wash. 340, 297 Pac. 155; *McNally v. Maryland Cas. Co.*, 162 Wash. 321, 298 Pac. 721; *Hill v. Great Northern Life Ins. Co.*, 186 Wash. 167, 57 P. (2d) 405; *Kane v. Order of United Commercial Travelers*, 3 Wn. (2d) 355, 100 P. (2d) 1036; *Zinn v. Equitable Life Ins. Co.*, 6 Wn. (2d) 379, 107 P. (2d) 921; and *Graham v. Police & Firemen's Ins. Ass'n*, 10 Wn. (2d) 288, 116 P. (2d) 352.

No two cases of this nature come before the courts on parallel facts, and, although we do announce and follow basic rules, it is apparent that each case must, to a very large extent, depend upon facts peculiar to itself. While it is impractical to discuss at length all of the cases just cited, we deem it proper to refer to each of them briefly.

In the *Horsfall* case, the policy insured against bodily injuries "caused solely by external, violent, and accidental means." The facts in that case showed that the insured, a blacksmith by occupation, was a healthy, robust man, capable of lifting from 200 to 250 pounds, and was fatally injured while lifting one end of a long iron bar weighing 350 to 400 pounds while standing in an awkward or dangerous position on a pile of iron and reaching to a point below his feet to lift his end of the bar. Upon those facts, this court held that the death was caused by accidental means. The court, in passing upon the questions present in that case, defined accident to be:

"Death from any unexpected event, which happens as by chance, or which does not take place according to the usual course of things."

The facts in the *Carpenter* case disclose that the insured contracted infection through abrasions upon his hands at a time when he skinned a sheep. In deciding that case, this court said:

"Nor are we satisfied that, laying aside the previous abrasions, the infection itself was not an accident within the meaning of the policy. From the evidence we have already quoted, it will be seen that one might do just as the deceased did innumerable times with no ill results; but, on some rare occasion, with no known difference in conditions, infection would result. The germ enters from the outside; therefore, it is external. It is a foreign substance forced into the circulatory system; therefore, it enters by violence. Its entry was not intended or expected; therefore, it was accidental."

The *Bjorklund* case disclosed that the insured was killed while operating a marble compressor, and is not of any aid in solving the question presented in the instant case.

The insured in the *McNally* case intended to drink scotch whiskey, but by mistake drank wood alcohol which caused his death. This court held the death accidental, and cited with approval *Zurich General Accident & Liability Ins. Co. v. Flickinger,* 33 F. (2d) 853, 68 A. L. R. 161, in which case the court held that the insured met accidental death when he drank poisonous wood alcohol thinking it to be an ordinary cocktail.

The *Hill* and *Kane* cases involved factual situations which have no application here. The facts in the *Graham* case disclose that the insured suffered injuries resulting in death at a time when he attempted, in an emergency, to jump down a basement stairs.

Respondent relies to a large extent upon our holding in the *Zinn* case. The facts in that case were similar to those in the *Carpenter* case. In each case, the insured was engaged in doing an intentional act during which an unexpected agency intervened which in reality caused the death.

An examination of all of our cases upon this subject demonstrates that an unusual unforeseen agency or happening was present and unexpectedly caused the injury which brought each of those cases within the provisions of the policy of insurance. We adhere to the rule laid down in the cited cases, but cannot extend that rule to incude all injuries which may be caused to holders of accident insurance.

In the case at bar, the insured was doing an ordinary and customary act in his usual way and no unexpected event interposed itself to cause injury. The dance was described as a fast fox trot. That dance, so far as the facts indicate, was no different from any other modern lively dance and called for no violent action other than that which was incident to the activity of dancing and readily foreseeable by the

insured. The insured's death was not caused by an unexpected event which happened by chance.

True, death is in most instances unexpected, but to hold that all unexpected deaths are accidental and that insurance companies which insure against accidental death are liable on that ground, would amount to a rewriting of such policies by the courts and put into each of those policies an intent that was never conceived by either the company or the insured at the time the policies were written. That, the courts cannot do. Courts may only determine the legal effect of contracts.

Respondents contend that our industrial insurance cases relative to accidental injury have a bearing upon this case and call our attention to the following statement in *Kearney v. Washington Nat. Ins. Co.,* 184 Wash. 579, 52 P. (2d) 903, which reads:

"The rule stated has been applied in this state where an accident happens which is within the scope of the workmen's compensation act. *Frandila v. Dept. of Labor & Industries,* 137 Wash. 530, 243 Pac. 5; *Matela v. Dept. of Labor & Industries,* 174 Wash. 144, 24 P. (2d) 429; *Hadley v. Dept. of Labor & Industries,* 174 Wash. 582, 25 P. (2d) 1031; *Anderson v. Dept. of Labor & Industries,* 174 Wash. 702, 26 P. (2d) 77. We see no reason why the rule of those cases should not be applied to an accident where the injured seeks to recover on a policy of accident insurance."

The rule referred to above was stated in the opinion as follows:

"The weight of the authorities and the decided trend of modern authority are to the effect that, where disease merely contributes to the death or accident, after being precipitated by the accident, it is not the proximate cause of the death or injury, nor a contributing cause, within the meaning of the terms of the policy."

It is clearly apparent that the statement upon which respondents rest their contention has no application to a situation such as we have in the case at bar. In the instant case, we are concerned with the question as to whether an ordinary activity preceding death is an accident. In the case just cited, we were concerned with the dispute as to whether disease which contributed to the accident, after being precipitated by the accident, was a proximate or contributing cause of the injuries. It is obvious that the propositions are entirely different and the decision as to one of them has no bearing upon the other.

We hold that the death of Mr. Hodges was not the result "through purely accidental means" and that the beneficiaries cannot recover the amount mentioned in the certificate of insurance.

The judgment is reversed, with instructions to dismiss the action.

ROBINSON, C. J., BEALS, and BLAKE, JJ., concur.