[No. 30075. *En Banc.* June 19, 1947.]

CLARA McMAHAN, *Appellant,* v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, *Respondent.*[1]

*C. D. Cunningham* and *Hull & Armstrong,* for appellant.

*H. E. Grimm,* for respondent.

STEINERT, J.—This was an action brought by the plaintiff to recover upon a policy of accident insurance issued by

[1]Reported in 182 P. (2d) 4.

the defendant. A demurrer to the second amended complaint, interposed by the defendant, was sustained by the trial court. Plaintiff having declined to plead further and having elected to stand on her complaint as twice amended, the court entered a judgment of dismissal, from which the plaintiff appealed.

Appellant, Clara McMahan, is the widow of Clarence L. McMahan, who died March 10, 1945.

On December 7, 1935, respondent, Mutual Benefit Health & Accident Association, issued to Clarence L. McMahan its policy designated "Special Farmers and Farm Hands Policy" insuring him

". . . against loss of life, limb, sight or time, resulting directly and independently of all other causes, from bodily injuries sustained during any term of this Policy, through purely Accidental Means (Suicide, sane or insane, is not covered), and against loss of time beginning while this Policy is in force."

The policy provided for a death benefit of two thousand dollars, with an increase of two hundred dollars for each year after the payment of the first annual premium until the benefits should amount to the total sum of four thousand dollars. The insured paid all premiums due on the policy up to and including the time of his death, at which time the benefits provided by the contract of insurance amounted to thirty-eight hundred dollars. Appellant is the beneficiary under the policy.

The allegations material to this controversy are contained in paragraph No. 3 of the second amended complaint, reading as follows:

"That on or about March 9, 1945, the said Clarence L. McMahan submitted to an operation necessary for, and for the purpose of, the alleviation and correction, or removal, of herniated discs at the fourth and fifth interspaces of the lumbar vertebrae, said condition being occasioned by and resulting from a previous accidental injury, to-wit: a fall occurring in 1917. Shortly thereafter, by mishap and misadventure as an unexpected, unusual and unforeseen result of the operation aforesaid, an embolism or blood clot entered the blood stream of the decedent, Clarence L. Mc-

Mahan, by reason of which he suffered a pulmonary thrombosis and as a result thereof, and independent of all other causes, and while said policy of insurance was in full force and effect, he died on or about March 10, 1945. That under the terms of said policy the death of said Clarence L. McMahan was occasioned directly by purely accidental means and independent of all other causes."

The allegations upon which appellant particularly relies is the language beginning with the words "Shortly thereafter" and continuing to the end of the paragraph.

It may be explained that an "embolism," as defined by Roscoe M. Gray, M. D., in his work, Attorney's Text Book of Medicine (2d ed.) 463, 480, is that process by which some floating foreign mass, called an embolus, is carried through the blood stream until it reaches and obstructs some artery too small to permit its further passage. According to Goldstein and Shabat, Medical Trial Technique, p. 346, a pulmonary thrombosis is the condition created when a clot, or embolus, in a vein breaks off and finally lodges in the pulmonary artery forming a clot called a thrombus.

So far as the record before us shows, respondent interposed no motion to make the second amended complaint more definite and certain, but, instead, filed a demurrer thereto based on three grounds, only one of which is pertinent here, namely, that the second amended complaint did not state facts sufficient to constitute a cause of action. Under this state of the record, the general question before us is whether that complaint does state a cause of action on the policy.

In passing on the legal sufficiency of a pleading, we must proceed according to the admonition of Rem. Rev. Stat., § 285 [P.P.C. § 86-3], which provides that, in the construction of a pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantial justice between the parties. Correlatively, Rem. Rev. Stat., § 286 [P.P.C. § 86-5], provides that when the allegations of a pleading are so indefinite or uncertain that the precise nature of the charge or defense

is not apparent, the court may require the pleading to be made definite and certain, or may dismiss "the same."

In conformity with the provisions of the first of these statutes, this court has from early days consistently held that, in determining whether or not a complaint is sufficient as against a demurrer, the pleading will be liberally, not strictly, construed, and that "even inferences from averments amounting to mere conclusions of law" will be construed in favor of the pleader. *Harris v. Halverson,* 23 Wash. 779, 63 Pac. 549; *Ankeny v. Pomeroy Grain Growers,* 170 Wash. 1, 15 P. (2d) 264; *Lidral Const. Co. v. Parker,* 9 Wn. (2d) 128, 113 P. (2d) 1022; *Cannon v. Miller,* 22 Wn. (2d) 227, 155 P. (2d) 500, 157 A. L. R. 530.

Further, having in mind the provisions of the second of these statutes, we have likewise as consistently held that where substantial facts constituting a cause of action are stated in the complaint or can reasonably be inferred from the matters set forth therein, although the allegations of such facts are in effect conclusions of law, or are otherwise imperfect, incomplete, or defective, the insufficiency pertaining to the form rather than to the substance of the pleading, the proper mode of correction is not by demurrer nor by excluding evidence at the trial, but by motion before trial to make the averments more definite and certain by amendment. *Harris v. Halverson, supra; Grout v. Tacoma Eastern R. Co.,* 33 Wash. 524, 74 Pac. 665; *Loveday v. Parker,* 50 Wash. 260, 97 Pac. 62; *Cannon v. Miller, supra.*

Appellant makes no contention in this case that the original injury, sustained by the insured in 1917 by reason of a fall, is to be considered for the purpose of establishing liability under the policy. Manifestly, she could not well make such contention because, by its express terms, the policy limits respondent's liability to injuries sustained *during the term* thereof, and the policy in this instance was not issued until December 7, 1935, approximately eighteen years after sufferance of the original injury. No doubt that matter was set forth in appellant's pleading merely for the purpose of showing the necessity or reason

for the operation that was performed in 1945, after the issuance of the policy. Wholly apart from that circumstance, appellant's contention is that the following language of her second amended complaint, included in the quotation above and to that extent here repeated for easier reference, sufficiently states a cause of action:

"Shortly thereafter [after the operation on March 9, 1945], by mishap and misadventure as an unexpected, unusual and unforeseen result of the operation aforesaid, an embolism or blood clot entered the blood stream of the decedent, Clarence L. McMahan, by reason of which he suffered a pulmonary thrombosis and as a result thereof, and independent of all other causes, and while said policy of insurance was in full force and effect, he died on or about March 10, 1945. That under the terms of said policy the death of said Clarence L. McMahan was occasioned directly by purely accidental means and independent of all other causes."

Underlying the more general question stated above is the crucial question whether the insured came to his death through "purely accidental means," as provided in the policy, that is to say, whether the entry of the blood clot into the blood stream of the insured, in the manner and under the circumstances alleged in the second amended complaint, by reason of which entry the insured suffered a pulmonary thrombosis resulting in death, constituted a bodily injury through "purely accidental means," within the meaning of the policy.

With the view and the hope of determining precisely the factual content of the complaint and what was intended by its allegations, we have read, and many times reread, the pleading; and we must confess that, in the light of the terminology used by the various courts in countless decisions upon the subject, the language of the present pleading is somewhat baffling. We must admit, however, that appellant's counsel, in drawing the pleading, may have been equally baffled by those same judicial expressions, including our own.

However, after careful consideration, and bearing in mind the rules stated above, we have come to the con-

clusion that the complaint purports to allege, and is susceptible of the interpretation, that the embolism, or entry of the blood clot into the blood stream of the insured, occurring by mishap or misadventure, was an unexpected, unusual, and unforeseen agency or happening, independent of all other causes of injury and death, and was occasioned by purely accidental means.

In this connection, it may be stated that, while apparently the second amended complaint was preceded by a first amended complaint and an original complaint, neither of these latter two pleadings is contained in the record brought to this court. Consequently, we do not know what induced the pleader to file a second amended complaint, whether it was through choice or because of action taken by opposing counsel with reference to the prior pleadings. We have only the second amended complaint, against which no motion, but only a demurrer, has been interposed.

When the second amended complaint was drawn, appellant's counsel apparently had in mind this court's decision in the case of *Zinn v. Equitable Life Ins. Co.,* 6 Wn. (2d) 379, 107 P. (2d) 921.

In that case, which was a unanimous *En Banc* decision, this court, in an extensive review of the authorities, cited, first, a long list of cases holding that death is *not accidental* where the means are intentional but the results are unusual or unexpected; and then cited a still longer list of authorities holding that death *is accidental* where the results are unusual, unexpected, or unforeseen, even though the means are intentional.

Immediately following the two lists of cases cited, this court said:

"We feel that the principle of law announced in the cases last cited reflects the great weight of authority and rests upon sound legal principles."

After some further citation and discussion of cases from both this and other jurisdictions, this court pronounced its considered view as follows:

"After a consideration of the authorities cited, including our own cases, we hold that death *is accidental,* within the

meaning of the provisions of insurance policies such as we have in the case at bar, where death occurs as the result of unusual, unexpected, or unforeseen events following an intentional act, provided that those events are not normally effected." (Italics ours.)

It may be pointed out that the *Zinn* case, *supra,* involved two policies insuring against death resulting " 'directly and independently of all other causes, from bodily injuries effected solely through *external, violent and accidental means,'* " (italics ours); whereas the policy in the case at bar insured against loss of life, etc., resulting "directly and independently of all other causes, from bodily injuries sustained . . . through *purely Accidental Means.* . . ." (Italics ours.) In other words, the present policy has a broader coverage, in that it does not require that the injuries be effected through violent or external means.

 In the recent case of *Evans v. Metropolitan Life Ins. Co.,* 26 Wn. (2d) 594, 174 P. (2d) 961, which also was an *En Banc* decision, but by a divided court, the respective policies likewise contained provisions covering death resulting through external, violent, and accidental means.

In that case, after citing and discussing a host of authorities, this court said:

"The conclusion we must reach from a consideration of all the cited cases is that accident is never present when a deliberate act is performed, *unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death."* (Italics ours.)

From this latter statement of the rule, it necessarily follows that accident *may be present* when a deliberate act is done, *if* some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death.

In justice to the trial court, it should be here stated that the *Evans* case, *supra,* had not been decided at the time the present case was before that court, nor was this court's opinion in that case published until months after the appeal in this case was taken. In fact, the first time that the *Evans*

case was mentioned in the present proceeding was in appellant's reply brief.

■ Appellant does not now contend that *every* death resulting from an operation is accidental or is sustained through accidental means. Her contention is that, although the insured submitted to the operation, constituting a voluntary act on his part, and, although the operation was intentionally performed, nevertheless the entry of the blood clot into the blood stream was not normally effected (*Zinn* case, *supra*), but was wholly unintentional, unforeseen, and unexpected; that it was the blood clot breaking loose and entering the blood stream, rather than the operative act of the doctor, that brought about the death.

Whether the appellant, by her evidence, can establish the fact that the entry of the blood clot into the blood stream was an event, agency, or happening, additional to and independent of the operation for herniated discs, and that such entry was an unusual, unexpected, and unforeseen event, we do not know; but we believe that, under the allegations of her second amended complaint, liberally construed, she was entitled to offer her proof on that proposition. It is conceivable that, if given the opportunity, she may be able to show that, during the operation itself, through some oversight a particular act was done, or was left undone, which caused or made inevitable the embolism, and that such act or neglect can reasonably be found to be purely an accident, or to constitute accidental means. It may be that she can show that, in the operation, normal and ordinary means were employed in the usual way, but, instead of producing the usual, normal, and expected result, it produced an altogether different result. She may possibly undertake to show that the embolism was not an eventuality which men versed in medical science would reasonably foresee as possible or remotely probable.

We do not judicially know whether or not, in this instance, unusual and unexpected consequences have resulted from an operation which in itself may not have been considered by the medical profession to be a serious one and from which no dire results reasonably would be expectable.

We make these observations merely as illustrative of the nature of the evidence which appellant may have had in mind and which she may endeavor to adduce in support of her second amended complaint; however, we are not thereby to be understood as suggesting what appellant must prove in order to recover on the policy, or that the suggested evidence is sufficient to warrant recovery. We simply hold that, under her second amended complaint appellant is entitled to produce such evidence as will bring her within the proper rules applicable to such cases.

None of the many cases on the subject which we have read was decided on demurrer. This is true probably for the reason that in those cases the allegations of the respective complaints were broad enough to admit proof of facts constituting a cause of action. We can conceive that in this case facts may be adduced which may at least present a close question. We think, therefore, that the facts should be presented, in order to make possible a decision which will be of some value in similar cases. In this connection, we may suggest that, in addition to the authorities cited in the *Zinn* and *Evans* cases, *supra,* a wealth of cases bearing on the general subject may be found in the following reports and restatements of the law on accident insurance: Notes (1920) 7 A. L. R. 1131; (1921) 13 A. L. R. 660; (1925) 39 A. L. R. 81; (1929) 59 A. L. R. 1295; 29 Am. Jur. 708, 756, Insurance, §§ 993, 1001; 45 C. J. S. 777, 816, Insurance, §§ 753, 778.

The judgment is reversed, with direction to the trial court to overrule the demurrer.

MALLERY, C. J., MILLARD, ROBINSON, SIMPSON, SCHWELLENBACH, ABEL, and HILL, JJ., concur.

JEFFERS, J. (dissenting)—Giving to the complaint in this action the most liberal construction possible, I am unable to conclude that it states facts sufficient to show that the death of Clarence L. McMahan was occasioned by purely accidental means, independent of all other causes.

I am unable to agree that the statement contained in the majority opinion (assuming the complaint so alleges)

" . . . that the embolism, or entry of the blood clot into the blood stream of the insured, occurring by mishap or misadventure, was an unexpected, unusual and unforeseen agency or happening, independent of all other causes of injury and death, and was occasioned by purely accidental means,"

is a sufficient allegation of facts to show that death was caused by purely accidental means and independent of all other causes.

Nor do I think that, when the facts in the cases of *Zinn v. Equitable Life Ins. Co.,* 6 Wn. (2d) 379, 107 P. (2d) 921, and *Evans v. Metropolitan Life Ins. Co.,* 26 Wn. (2d) 594, 174 P. (2d) 961, are considered, it can be said that, under the rules announced therein, the facts pleaded in the instant case are sufficient to show that the death of the insured was caused purely by accidental means, independent of all other causes.

In other words, it is my opinion that the insured submitted to an operation, a voluntary act on his part; that nothing was wrong with the operative procedure; but that an unexpected result followed.

We stated in the *Evans* case, *supra*:

"Additional cases holding that, to warrant a recovery under a policy against death or injury by accidental means, it must appear the *means* was accidental, and that it is not enough that the result was unusual, unexpected, or unforeseen, are: [Citing cases.]" (Italics mine.)

We further stated:

"There is another line of cases which hold that, where the injury or death is the unusual, unexpected, or unforeseen result of an *intentional act,* such injury or death results from accidental means, although there is no proof of mishap, mischance, slip, or anything out of the ordinary in the act or event [the intentional act] which causes the injury or death. However, we do not feel it necessary to analyze those cases for the reason that their holdings do not conform to the rule adopted by this court and by the majority of the courts of this country." (Italics mine.)

I repeat that I am unable to see how a blood clot passing into the blood stream, as an unexpected result of the opera-

tion, can be said to constitute purely accidental means, independent of all other causes.

I am therefore of the opinion the trial court properly sustained a demurrer to the complaint.