[No. 32959.   Department Two.   May 26, 1955.]

MARTIN CHRISTENSEN, *Appellant*, v. STERLING INSURANCE COMPANY, *Respondent*.[1]

*John W. Fishburne* and *Willard Hedlund,* for appellant.

*Burkey, Burkey & Marsico,* for respondent.

[1]Reported in 284 P. (2d) 287.

WEAVER, J.—Was the United States a "country at war" on May 11, 1952 (during the Korean conflict), within the meaning of the terms of a life insurance policy?

The answer is to be found within the scope and meaning of the word "war." Is it to be construed in its legal or technical sense, or is it to be given its ordinary meaning as used in common speech?

Such construction becomes important in four distinct situations which concern an insured in military service:

First: Where death occurs prior to the formal declaration of war, as, for example, during the attack on Pearl Harbor, December 7, 1941; the official declaration of war by Congress being made the following day.

Second: Where death occurs while the armed forces of the country are engaged in combat in which a formal declaration of war never was made.

Third: Where death occurs after the cessation of hostilities in a formally declared war, but before the war is officially ended.

Fourth: Where death occurs after the cessation of hostilities in an armed conflict in which a formal declaration of war never was made.

We are concerned, in this case, with a factual situation arising under the second category.

The insured died as a result of an automobile accident in Alaska, on May 11, 1952, while he was serving in the military service of the United States.

The life insurance policy, on which this action by the beneficiary is based, contains a "war service" clause that provides:

"If the Insured shall die from any cause while in Military, Naval or Air Service *of any country at war* . . . the Company shall be liable only for a refund of the premiums paid, or the reserve . . . whichever is the greater. . . ." (Italics ours.)

Prior to this action, defendant insurer refunded the premiums paid, since they were greater than the policy reserve. Defendant denied further liability for the reason that death of the insured was within the terms of the war service clause.

Plaintiff appeals from a judgment dismissing the action with prejudice.

Based upon a stipulation of counsel and facts which the court judicially noticed, it appears: that the Congress of the United States did not, at any time, make a formal declaration of war against the government of North Korea nor against any of its allies; that certain nations, including the United States, had adopted the "Charter of the United Nations"; that the United States was "obligated to join . . . in carrying out the measures decided upon by the Security Council" of the United Nations; that the Security Council requested "members of the United Nations to furnish the necessary assistance to repel the armed attack and restore international peace" in Korea; that armed forces of the United States were dispatched to Korea by direction of the president, and that, prior to and on the date of the death of the insured (May 11, 1952), the "armed forces of the United States, including all divisions of the service, were engaged in actual armed combat with the military troops of North Korea" and troops from China; that the government of the United States stated officially that, as of May 9, 1952 (two days prior to insured's death), the United States had suffered 108,413 casualties, of which 19,096 had been killed in combat in the Korean conflict.

Plaintiff relies on those cases that have construed the word "war," as used in life insurance contracts, in its strict, constitutional sense. These cases hold that an armed conflict is not a war, in the legal or constitutional sense, in the absence of a declaration of war by the Congress of the United States. *Beley v. Pennsylvania Mut. Life Ins. Co.,* 373 Pa. 231, 95 A. (2d) 202, 36 A. L. R. (2d) 996, cert. denied 346 U. S. 820 (1953) (Insured killed in Korea.); *Harding v. Pennsylvania Mut. Life Ins. Co.,* 373 Pa. 270, 95 A. (2d) 221 (1953) (Insured killed September 11, 1950, in train wreck on way to military camp.); *Rosenau v. Idaho Mut. Benefit Ass'n,* 65 Idaho 408, 145 P. (2d) 227 (1944) (Insured killed at Pearl Harbor.); *West v. Palmetto State Life Ins. Co.,* 202 S. C. 422, 25 S.E. (2d) 475, 145 A. L. R. 1461 (1943) (Insured killed at Pearl Harbor.); *Savage v. Sun Life As-*

*surance Co. of Canada,* 57 F. Supp. 620 (D.C. La., 1944) (Insured killed at Pearl Harbor.).

These decisions are based, in part, on the rule that a court cannot take judicial notice of the existence of a war until a formal declaration has been made by the proper department of the Federal government.

Other courts, in construing similar clauses, have held that in private matters, unaffected by a public interest, the courts are free to take judicial notice of the existence of a war although no formal declaration of war has been made by the Federal government. *Western Reserve Life Ins. Co. v. Meadows,* 152 Tex. 559, 261 S.W. (2d) 554 (1953) (Insured killed in Alaska during Korean conflict.); *Langlas v. Iowa Life Ins. Co.,* 245 Iowa 713, 63 N. W. (2d) 885 (1954) (Insured killed in Korea.); *Stanbery v. Aetna Life Ins. Co.,* 26 N. J. Super. 498, 98 A. (2d) 134 (1953) (Insured killed in Korea.); *Weissman v. Metropolitan Life Ins. Co.,* 112 F. Supp. 420 (D.C. Cal., 1953) (Insured killed in Korea.); *Gagliormella v. Metropolitan Life Ins. Co.,* 122 F. Supp. 246 (D.C. Mass., 1954) (Insured killed in Korea.).

In these cases, the court construed the word "war" in its ordinary, popular sense and held that the Korean conflict was a war within the meaning of the terms of the policy.

We cannot subscribe to the reasoning of the *Beley* case, *supra,* and those decisions which have followed it. To our mind, it overlooks four considerations which are controlling.

■ First: In matters which are purely private, courts may take judicial notice that a war exists.

■ Second: The word "war," as it is generally understood, involves armed conflict between the military forces of two or more nations. Its existence does not depend upon a declaration by Congress. "In common understanding, war is war, whether declared or undeclared." *Langlas v. Iowa Life Ins. Co., supra.*

Third: It ignores the well-known purpose of insurers.

Fourth: The legalistic determination of the question ignores the *modus operandi* of the United Nations. As one legal writer observed:

" . . . if the Charter of the United Nations is strictly applied, war of the declared or constitutional type may be for historians." Cecil J. Olmstead, 1953 Annual Survey of American Law, page 12.

This court has recognized the right of parties to a contract to use the term "war" in other than its strict, constitutional sense. *Hoover v. Sandifur,* 25 Wn. (2d) 791, 171 P. (2d) 1009, 168 A. L. R. 170 (1946).

When construing the terms of a policy of insurance, the court seeks to determine the intent of the parties, and the general rules governing the construction of contracts must be applied. The people to whom policies of insurance are issued consider and understand the terms in their popular and ordinary meaning (*Kane v. Order of United Commercial Travelers,* 3 Wn. (2d) 355, 360, 100 P. (2d) 1036 (1940)), and the court will give the language used such a construction

" . . . unless it is apparent from a reading of the whole instrument that a different or special meaning was intended, or is necessary in order to avoid an absurd or unreasonable result." *Richards v. Metropolitan Life Ins. Co.,* 184 Wash. 595, 601, 55 P. (2d) 1067 (1935).

When, as in Korea, the military forces of two or more nations, under the direction of their governments, meet in armed combat over an extended period of time and in numerous engagements, such activity is ordinarily called "war." It is war in the ordinary, popular sense of the word.

A reading of the whole instrument does not disclose that a different or special meaning was intended by the words "country at war."

The purpose of a war service clause is to define a risk and exclude it from the general coverage of the policy. If "war" is given its ordinary, popular meaning, liability is determined by actual combat, a factor which naturally affects the risk; if given its strict, constitutional meaning, liability is determined by a formal declaration which, unless coupled with actual combat, does not increase or decrease the risk. In the light of the apparent object of the clause,

we conclude that the parties did not intend to have the language used, construed in its strict, technical sense.

The United States was a "country at war," within the meaning of the terms of the policy.

The judgment dismissing the action is affirmed.

HAMLEY, C. J., MALLERY, HILL, and ROSELLINI, JJ., concur.

June 20, 1955. Petition for rehearing denied.