[No. 686-2. Division Two. November 10, 1972.]

T. C. WHITESIDE, *Appellant,* v. NEW YORK LIFE INSURANCE COMPANY, *Respondent.*

*Vincent H. D. Abbey* (of *Abbey, MacFarland & Kleist*), for appellant.

*Robert W. Thomas* (of *Lane, Powell, Moss & Miller*), for respondent.

PEARSON, J.—This appeal raises a single question. Does the double indemnity provision of a life insurance policy issued by defendant, New York Life Insurance Company, apply to the death of the insured, Thomas Edward Whiteside, resulting from a self-injected overdose of methedrine and morphine?

In an extensive and well-reasoned memorandum decision, the trial court ruled that the double indemnity provi-

sion did not apply, and the action seeking to recover the benefit was dismissed. We agree.

The issue was brought before the trial court by concurrent motions for summary judgment. The following material facts were established by request for admissions of facts under CR 36. Plaintiff, T. C. Whiteside, was the father of the deceased insured and was the beneficiary under decedent's life insurance policy No. 25948101. On December 11, 1968, while the policy was in effect, Thomas E. Whiteside, who had a long history of drug use, died as a result of an injection of methedrine and morphine administered by himself.

One provision of the policy stated that the double indemnity benefit would be paid upon proof "that the Insured's death resulted directly, and independently of all other causes, from *accidental bodily injury* . . . "[1] (Italics ours.)

Plaintiff offered an unsworn death certificate from California which contained a multiple choice box under the general heading "Other significant conditions contributing to death . . . " There were three alternatives to check: "accident, suicide, or homicide." The box marked "accident" was checked. At another earlier place on the death certificate under the heading "cause of death" it stated, "Acute methedrine and morphine intoxication," and under the heading, "Due to or as a consequence of" it stated "Injection of overdose."

As a preliminary question, plaintiff urges that the designation "accident" in the death certificate as the cause of death resulted directly, and independently of all other court from ruling upon the basic issue.

Aside from a question of the admissibility of the certificate of death (or the portion in question), which we do not determine, we will do as the trial court did, and assume that decedent did not intend the consequence of the injec-

---

[1] It is agreed that plaintiff was entitled to the basic policy coverage and only the double indemnity benefit is in question.

tion of drugs and that his death was, in fact, "accidental" or unexpected. Accordingly, the trial court was justified in determining the basic issue of law. Furthermore, read as a whole, the death certificate was not inconsistent with the facts established by the request for admissions, but in our view substantiated the facts relating to insured's death.

It is apparent at the outset that the outcome of this appeal hinges upon the meaning given to the phrase "accidental bodily injury" in the context in which it was used. In reaching its result, the trial court recognized the usual rule that unexplained ambiguities in the insurance contract are construed against the insurer. *Selective Logging Co. v. General Cas. Co. of America,* 49 Wn.2d 347, 301 P.2d 535 (1956). The trial court also recognized the equally axiomatic rule that the courts may not create an ambiguity where none exists. (*Leinum v. Continental Cas. Co.,* 2 Wn. App. 233, 469 P.2d 964 (1970)), and that the words used in insurance contracts are to be given their ordinary or popular meaning. *Christensen v. Sterling Ins. Co.,* 46 Wn.2d 713, 284 P.2d 287 (1955).

There is, as the trial court pointed out, a plethora of cases concerning this question and a division of authority, depending upon whether or not the court obliterates a distinction between *accidental death* and *accidental injury resulting in death.* See Annot., 52 A.L.R.2d 1083 (1957) for a collection of cases; for a recent discussion of the precise issue *see Gordon v. Metropolitan Life Ins. Co.,* 256 Md. 320, 260 A.2d 338 (1970).

 The Washington Supreme Court has considered similar provisions in a variety of factual patterns. *See Zinn v. Equitable Life Ins. Co.,* 6 Wn.2d 379, 107 P.2d 921 (1940); *Evans v. Metropolitan Life Ins. Co.,* 26 Wn.2d 594, 174 P.2d 961 (1946); *Towey v. New York Life Ins. Co.,* 27 Wn.2d 829, 180 P.2d 815 (1947); *McMahan v. Mutual Benefit Health & Accident Ass'n,* 28 Wn.2d 202, 182 P.2d 4 (1947); *McMahan v. Mutual Benefit Health & Accident Ass'n,* 33 Wn.2d 415, 206 P.2d 292 (1949) (second appeal); *Bennett v. Metropolitan Life Ins. Co.,* 35 Wn.2d 284, 212 P.2d 790

(1949); *Johnson v. Business Men's Assurance Co. of America,* 38 Wn.2d 245, 228 P.2d 760 (1951); *see also Tucker v. Bankers Life & Cas. Co.,* 67 Wn.2d 60, 406 P.2d 628, 23 A.L.R.3d 1098 (1965), where the issue was discussed in a dissenting opinion by Justice M. Hill. The court has not, however, previously considered the case of an illegal, self-administered drug resulting in an unintended death. Even though its cases are not precisely in point, the Supreme Court, when considering this type of provision, has consistently preserved a distinction between *accidental means* and *accidental results. Evans v. Metropolitan Life Ins. Co., supra.* With reference to deliberate acts which result in death, the Supreme Court has followed the rule it stated in *Evans v. Metropolitan Life Ins. Co., supra* at 622:

> The conclusion we must reach from a consideration of all the cited cases is that accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and *unforeseen* happening occurs which produces or brings about the result of injury or death.

(Italics ours.) The rule is both logical and necessary unless we are to ignore the plain meaning of the language used in the insurance contract—construed in its ordinary sense.

■ Application of the rule to this case compels us to affirm the judgment reached by the trial court and its conclusion is so clear and logical that we adopt it as our own:

> The issue is whether there is proof of accidental bodily injury. No other cause of death has been suggested other than the overdose of drugs. There is no showing of an independent happening which has brought about death, but rather death has followed as a result of the intentional taking of the drug. The injection of the drug was, in and of itself, a recurring bodily injury inflicted upon the defendant by himself. It was intentional and not accidental and when the drug was injected it was the intention to perform an act which was injurious to the body. In light of this wording of the policy, the court cannot see that the resultant death, though *that* was accidental,

is covered where the policy requires the beneficiary to *prove* that the *initial* trauma to the body is accidental.

The rationale of this application of the rule was succinctly stated by the Maryland Court of Appeals in *Gordon v. Metropolitan Life Ins. Co., supra* at 324.

Here, with the use of an illegal drug without medical authorization or supervision, a drug with well known potential for injury, we are hard pressed to say that a great amount of risk was not assumed, or was unforeseeable.

Judgment affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.