[No. 3537–II.   Division Two.   April 15, 1980.]

JOAN M. McKINNON, *Individually and as Administratrix, Appellant,* v. REPUBLIC NATIONAL LIFE INSURANCE COMPANY, ET AL, *Respondents.*

*Richard J. Glein,* for appellant.

*Lee Corkrum* and *Richard E. Monroe,* for respondents.

PETRIE, J.—Plaintiff, Joan McKinnon, appeals from a summary judgment dismissing her complaint which sought to recover accidental death benefits under the terms of two group insurance policies issued by defendant Republic National Life Insurance Company and defendant Travelers Insurance Company. We reverse and remand for trial.

■ Preliminarily, we reject consideration of plaintiff's counsel's affidavit in opposition to defendants' motion, because the material "facts" stated therein obviously are not based upon the affiant's personal knowledge. *Klossner v. San Juan County,* 93 Wn.2d 42, 605 P.2d 330 (1980). We are, however, required to review the remainder of the facts in the light most favorable to Mrs. McKinnon. Summary judgment is available only when the moving party has met its burdens initially to prove by uncontroverted facts that (1) no genuine issue of material fact exists and (2) those facts establish that the moving party is entitled to judgment as a matter of law. *Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 598 P.2d 1358 (1979).

From the record, we glean the following picture. In the afternoon of July 14, 1976, plaintiff's husband, Donald McKinnon, a person who "could swim fairly well", stated that "he was just going for a walk." He had no financial or marital problems and he "always acted in a manner in which to preserve his own safety and the safety of his family."

At midafternoon, traffic in both eastbound and westbound lanes of the Evergreen Point Floating Bridge across Lake Washington was "either stopped or slowing." Mr.

McKinnon was seen alternately walking and running eastbound on the bridge, darting in and out of traffic. He "looked as if he was being pursued . . ." He ran across the westbound lanes of traffic, and at a point on the bridge which was subsequently determined to be approximately 75 yards from the west shore and 20 feet above the water, he stepped up on the curb, put his hand on the north railing of the bridge and, although wearing a sweat shirt, light pants, and boots, jumped or catapulted off the bridge into the water which, at that point, was "about ten feet" deep.

An eyewitness who ran to the railing about 10 seconds later initially saw only bubbles in the water where Mr. McKinnon had entered. After a few more seconds, the same person observed that McKinnon "bobbed up" to the surface, was "spitting out a lot of water," and "dog–paddling to keep his head above water." The witness did not observe any external injuries, but did notice McKinnon "appeared to try to save himself" and that he "was dog–paddling slower than I thought he should have been paddling to keep himself up." The witness shouted words of encouragement to McKinnon, but after a few minutes McKinnon disappeared below the surface of the water and apparently drowned.

Both policies provide payments for specified losses, including death, resulting from accidental bodily injury. Republic's policy provides:

[W]hen accidental bodily injury occurs . . . directly and independently of all other causes, . . . the Company will pay:

Travelers' policy provides:

The term "injuries" as used in this Policy means accidental bodily injuries which are the direct and independent cause of the loss for which claim is made . . .

Both policies exclude coverage in the event of suicide, sane or insane, or any attempt thereat; and Republic's policy specifically excludes "Intentionally self–inflicted injuries."

Both companies urge us to affirm the summary judgment of dismissal on the alternative, but interrelated theories,

that as a matter of law Mr. McKinnon's death (1) was the result of suicide, or at least of an intentionally self–inflicted injury; or (2) was not caused by accidental bodily injury as defined in their respective policies.

We pause only momentarily to dispose of the suicide and intentionally self–inflicted injury arguments. Measured by the standard applied in *Noll v. John Hancock Mut. Life Ins. Co.*, 66 Wn.2d 540, 403 P.2d 898 (1965), we find sufficient evidence in the record to require resolution of those issues by a fact finder. Under the facts presented, a finder of fact could reasonably infer that Mr. McKinnon's leap from the bridge was prompted by reasons other than an attempt at suicide.

The "accidental bodily injury" argument is not so readily disposed of. Defendants rely heavily upon the concept of an "accident" as enunciated in *Evans v. Metropolitan Life Ins. Co.*, 26 Wn.2d 594, 174 P.2d 961 (1946). *Evans* states the rule in a negative format at page 622:

> accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death.

In *Zinn v. Equitable Life Ins. Co.*, 6 Wn.2d 379, 107 P.2d 921 (1940), cited favorably in *Evans,* the rule is stated in an affirmative format at page 392:

> death is accidental, within the meaning of the provisions of insurance policies such as we have in the case at bar, where death occurs as the result of unusual, unexpected, or unforeseen events following an intentional act, provided that those events are not normally effected.

This concept of "accident" has become firmly entrenched in the common law of this state; it would be inappropriate for this court to dislodge it at this time.[1] We do detect, however, that in recent years the Supreme Court has

---

[1] We note, however, as to individual policies of disability insurance, the Insurance Commissioner has promulgated a rule which prohibits issuance of policies that require "accidental means" as a test or condition of coverage. WAC 284–50–315(4).

encouraged trial courts to grant broad deference to a fact finder's ability to ferret out from the circumstantial evidence the additional "happening" or "event" and in close cases has encouraged trial courts to rely heavily upon the fact finder's determination of whether or not any such happening or event is "unusual, unexpected, or unforeseen."

For example, in *Noll v. John Hancock Mut. Life Ins. Co., supra,* the insurer denied liability under a double indemnity clause for death by accidental causes on the theory that the insured's death was caused by suicide and not by accident. Following a verdict in favor of the beneficiary, the insurer appealed, contending the trial court had erred by denying its motion for a directed verdict. Although the essential issue was whether or not suicide had been established as a matter of law, the Supreme Court recognized a theory of "accident" which certainly did not comport with the *Evans/Zinn* requirements. The insured was found dead on the floor of his garage lying at the rear of his car with his face 1 to 3 feet from the exhaust pipe. The car's engine was running, and the garage door was closed. The court accepted a theory that the insured had decided to attach his new license tabs to the car, and in the course of that effort his face was very close to the exhaust pipe "and that the jury could have believed that he took a couple of breaths in that position and then passed out." *Noll v. John Hancock Mut. Life Ins. Co., supra* at 544. The court thereupon affirmed the trial court's denial of the insurer's motion and declared that testimony in support of the beneficiary be "accorded the most favorable inferences."

In *Tucker v. Bankers Life & Cas. Co.,* 67 Wn.2d 60, 406 P.2d 628, 23 A.L.R.3d 1098 (1965), a majority of the Supreme Court affirmed a trial court's finding that the insured "was involved in an accident" in the face of the insured's own testimony that as he was sliding a heavy bulldozer cutting edge out of a station wagon, his "back went out" and he then fell. The court found sufficient evidence to support the trial court's finding of accidental injury from the accident report form which the insured had

presented to the insurer and which was admitted into evidence to establish that a claim had been made. On that form the insured had written "equipment slipped—caused fall and injury." Despite a vigorous dissent asserting that there was "no unforeseen incident", a majority of the court, sitting en banc, affirmed the trial court's determination that the insured was covered under an accident insurance policy.

Applying the standard of appellate review as exemplified by *Noll* and *Tucker,* we reach the conclusion that a jury should pass upon the critical issues of fact in the case at bench.

The facts necessarily point to a conclusion that Mr. McKinnon's act of leaping over the railing was an intentional and deliberate act, regardless of his motivation for jumping. Thus, the only question remaining is whether the facts and all reasonable inferences derived therefrom permit a trier of fact to reach a factual conclusion that after the leap another event occurred which was "unusual, unexpected, or unforeseen" and which would not be "normally effected."

The facts do permit a conclusion that Mr. McKinnon's actions following his entry into the water were inconsistent with the actions of a person who "could swim fairly well." A jury could conclude that something occurred which impaired his swimming capacity. Thus, we cannot state as a matter of law that another "event" did not take place. Further, we cannot state as a matter of law that that event did not cause his death.

Accordingly, the real question is whether, under the fact pattern presented, that "event" can be categorized by a jury as "unusual, unexpected, or unforeseen." Clearly, if instead of landing in the water, McKinnon had struck the side of a passing boat, thus injuring himself and impairing his swimming capacity to the extent that he drowned, the intervening event of the passing boat at that precise time and place would be "unusual, unexpected, or unforeseen." There is, of course, nothing in the record to suggest such an obviously "unusual" event. Nevertheless, from the hurried

actions and harried appearance of Mr. McKinnon before his jump, a jury could reasonably infer that he was somewhat disoriented and that he intended merely to leap to a point of relative safety not realizing the magnitude of his peril caused by a combination of the height of the bridge above the lake and the relatively shallow depth of the water. Considered by itself, the leap was not necessarily an act injurious to the body. *See Whiteside v. New York Life Ins. Co.,* 7 Wn. App. 790, 503 P.2d 1107 (1972). Further, from the combined factors of the time sequence between his leap and his subsequent reappearance on the surface, and his subsequent relatively feeble attempts to survive, the jury could reasonably infer that Mr. McKinnon either forcefully struck the bottom of the lake or momentarily was unable to extricate himself from the bottom, either of which resulted in an impairment of his swimming capacity.

Whether or not these happenings, or any of them, actually occurred and whether or not they are "unusual, unexpected, or unforeseen events" are questions of fact for a jury to resolve; they are not matters of law to be resolved by the trial court or us.

Judgment reversed with direction to proceed consistent herewith.

JOHNSON, J. Pro Tem., concurs.

REED, C.J. (concurring)—I concur in the result reached by the majority. However, I believe Mrs. McKinnon's case highlights the pressing, if not urgent, need for a reexamination of the rule to which the courts of this state now pay allegiance and appear to be committed.

First, the cases in which our Supreme Court has invoked the *Zinn–Evans*[2] rule and not found accident are distinguishable on their facts from the case at bar; these cases involved an intentional act which resulted in death because some internal condition made the decedent predisposed to

---

[2]See the positive and negative formulations of this rule in Judge Petrie's opinion at page 857.

the injury, which occurred in the performance of an ordinary activity.[3] *Zinn v. Equitable Life Ins. Co.*, 6 Wn.2d 379, 107 P.2d 921 (1940); *Evans v. Metropolitan Life Ins. Co.*, Wn.2d 594, 174 P.2d 961 (1946). Whatever prompted Mr. McKinnon's leap into Portage Bay, such an action was not, on this record, among his ordinary and usual activities; nor is there evidence of any preexisting condition which made his leap unusually dangerous to him.

Second, the policy here covers "accidental bodily injury," rather than "*bodily injuries sustained through external, violent and accidental means*," as did the policies involved in *Evans v. Metropolitan Life Ins. Co., supra* at 597. Historically, many other state courts have distinguished between "accidental" and "accidental means" when applying a specific insurance policy provision to a variety of fact situations.[4] The rule as stated in *Evans* has generally been applied where the policy at issue contains "accidental means" language. In *Evans,* our Supreme Court noted its discussion would be

an extensive examination of the authorities and a complete analysis of the subject *relating to contracts such as were made by appellants and Mr. Evans.*

(Italics ours.) *Evans v. Metropolitan Life Ins. Co., supra* at 604. The *Evans* formulation thus may not be applicable to the policies in this case.

---

[3]*Hodges v. Mutual Benefit Health & Accident Ass'n,* 15 Wn.2d 699, 131 P.2d 937 (1942) (heart attack while dancing); *Bennett v. Mutual Trust Life Ins. Co.,* 21 Wn.2d 698, 152 P.2d 713 (1944) (cerebral hemorrhage immediately after routine and otherwise ordinary operation); *Evans v. Metropolitan Life Ins. Co.,* 26 Wn.2d 594, 174 P.2d 961 (1946) (heart attack after pushing car); *McMahan v. Mutual Benefit Health & Accident Ass'n,* 28 Wn.2d 202, 182 P.2d 4 (1947) (pulmonary thrombosis when preexisting but unknown embolism dislodged during otherwise routine surgery); *Bennett v. Metropolitan Life Ins. Co.,* 35 Wn.2d 284, 212 P.2d 790 (1949) (routine immobilization for broken hip for deceased already hospitalized for obesity, epilepsy and tuberculosis; preexisting conditions made the fatal pulmonary edema almost inevitable).

[4]For a thorough discussion of the various distinctions involved, see Annot., *Insurance: "accidental means" as distinguishable from "accident," "accidental result," "accidental death," "accidental injury," etc.,* 166 A.L.R. 469 (1947).

In cases where the insurance policy at issue did not contain this "simple, yet tricky little term,"[5] courts have generally not required both accidental means and accidental results. Instead, they have looked to an accident definition more in accord with the ordinary and popular meaning of the word:

"happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected";

*Martin v. Insurance Co. of North America,* 1 Wn. App. 218, 220, 460 P.2d 682 (1969).

Third, the broad deference our court has granted fact finders, as pointed out by Judge Petrie, may indicate that Washington has, in effect, abandoned the technical "accidental means—accidental result" distinction which formed the basis of the *Evans* rule. In 1946, *Evans* noted that the majority of courts have adopted the distinction. *Evans v. Metropolitan Life Ins. Co., supra* at 613. Since that time, however, so many courts have rejected the distinction and held the two terms legally synonymous that it appears the *Evans* approach would now be followed only by a minority of state courts which have considered the question.[6]

Almost 50 years ago, in a dissent which has since become the majority rule, Justice Cardozo predicted

---

[5]1A J. Appleman, *Insurance Law and Practice* 23 (1965).

[6]In addition to the 13 states listed in Annot., 166 A.L.R. 469, 473 n.20 (Arkansas, Colorado, Idaho, Iowa, Kansas, Nebraska, New York, Oklahoma, South Carolina, Utah, Vermont, Virginia and Wisconsin), the following cases effectively reject the distinction: *INA Life Ins. Co. v. Brundin,* 533 P.2d 236 (Alaska 1975); *Knight v. Metropolitan Life Ins. Co.,* 103 Ariz. 100, 437 P.2d 416 (1968); *Gulf Life Ins. Co. v. Nash,* 97 So. 2d 4 (Fla. 1957); *Taylor v. John Hancock Mut. Life Ins. Co.,* 11 Ill. 2d 227, 142 N.E.2d 5, *rehearing denied* (1957); *Freeman v. Commonwealth Life Ins. Co.,* 149 Ind. App. 211, 271 N.E.2d 177 (1971); *Schonberg v. New York Life Ins. Co.,* 235 La. 461, 104 So. 2d 171 (1958); *Scott v. New Empire Ins. Co.,* 75 N.M. 81, 400 P.2d 953 (1965); *Botts v. Hartford Accident & Indem. Co.,* 284 Ore. 95, 585 P.2d 657 (1978); *Beckham v. Travelers Ins. Co.,* 424 Pa. 107, 225 A.2d 532 (1967); and *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549 (Tex. 1976).

[t]he attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog.[7]

*Landress v. Phoenix Mut. Life Ins. Co.,* 291 U.S. 491, 499, 78 L. Ed. 934, 54 S. Ct. 461, 90 A.L.R. 1382 (1933) (Cardozo, J., dissenting). Such a bog as this artificial distinction might easily "swallow up" the average purchaser of accident insurance. Washington courts have long insisted, however, that the language of insurance policies should be interpreted in accordance with the way it would be understood by the average man purchasing insurance, rather than in a technical sense. *Ames v. Baker,* 68 Wn.2d 713, 415 P.2d 74 (1966); *Zinn v. Equitable Life Ins. Co., supra; Starr v. Aetna Life Ins. Co.,* 41 Wash. 199, 83 P. 113 (1905). In *Zinn* our court quoted with approval then Chief Judge Cardozo's support for the average man's viewpoint in *Lewis v. Ocean Accident & Guar. Corp.,* 224 N.Y. 18, 120 N.E. 56, 7 A.L.R. 1129 (1918):

'Probably it is true to say that in the strictest sense and dealing with the region of physical nature, there is no such thing as an accident.' But our point of view in fixing the meaning of this contract, must not be that of the scientist. It must be that of the average man . . .

(Citation omitted.) *Zinn v. Equitable Life Ins. Co., supra* at 386.

Finally, as one treatise writer has pointed out, many state courts which do make the distinction also hold that where, *from the standpoint of the insured,* death or injury is the unusual, unexpected or unforeseen (as opposed to unforeseeable) result of a voluntary act, the requirement of

---

[7]The Serbonian Bog, formed around Lake Serbonis, was "a treacherous mixture of sand and water on the coast of Lower Egypt described by Diodorus Siculus, who said, 'Many unacquainted with the nature of the place, by missing their way, have been swallowed up, together with whole armies.'" J. Milton, *Paradise Lost, Samson Agonistes, and Lycidas,* footnote to Book II, line 592 (E. LeCompte ed. 1961).

accidental means is satisfied.[8] Thus, even if these policies contained accidental means language, these courts would hold that, absent a showing of suicide or intended injury, the question of accident should be for the jury. Although clearly Mr. McKinnon intended to enter the water, on this evidence a trier of fact could find he did not expect to be injured, much less to drown.

Reconsideration denied May 13, 1980.

---

[8]1A J. Appleman, *Insurance Law and Practice* 28 n.25 (1965). *See, e.g., Cox v. Prudential Ins. Co.,* 172 Cal. App. 2d 629, 343 P.2d 99 (1959); *Hammer v. Mutual Benefit Health & Accident Ass'n,* 158 Ohio St. 394, 109 N.E.2d 649 (1952).