[No. 6466–9–II. Division Two. November 19, 1984.]

DOUGLAS MANSON, ET AL, *Appellants,* v. FOUTCH–MILLER, ET AL, *Respondents.*

*David A. Bufalini* and *John S. Glassman,* for appellants.

*Dennis J. LaPorte,* for respondents.

WORSWICK, A.C.J.—Douglas Manson was a laborer for a contractor putting up an addition to a Navy building. While clearing scrap wood, he fell through a hole in the roof cut by an employee of Foutch–Miller, a subcontractor. He appeals a defense verdict in his negligence action against Foutch–Miller, contending that the trial court should have held Foutch–Miller liable as a matter of law for violating safety regulations. We affirm.

David Villwock, the employee who cut the hole, was Foutch–Miller's foreman. Before cutting, Villwock marked the outlines of several holes to be made in the metal roof for exhaust fans and vents. While doing this, he enlisted Manson's help in moving piles of building materials. In the process, he pointed out the location of some of the planned

holes, including the one through which Manson later fell.

The day before the accident, Villwock cut the holes and covered them with sheets of plywood to prevent accidents because others were working on the roof. He placed the metal cutouts on top of the sheets covering the smaller holes. However, when cutting the hole in question he dropped the cutout to the floor below. He covered this 28½–inch square hole with a 4– by 8–foot sheet of ¾–inch plywood and put a 3– by 4–foot sheet of ¾–inch plywood on top of that. The combined weight of the two sheets was over 100 pounds. He butted the long side of the larger sheet against the parapet which ran around the outer edge of the roof; the plywood was not otherwise secured. Villwock then informed Don McCuish, foreman of the carpenter crew, that he could begin installing the wood frames used to construct watertight seals around the machinery to be installed in the holes.

The next day, McCuish told Manson and another laborer to clear scrap from the roof while his crew installed the frames. Manson's co-worker removed the smaller of the plywood sheets covering the hole and put it on a pile of plywood on another part of the roof. He then started to remove the large sheet but was called away by McCuish. Manson then picked up the large sheet by one of the 4–foot–long sides and took a step forward to get a better grip. He thereupon fell through the hole.

The parties agree that Foutch–Miller had a duty to comply with regulations promulgated under the Occupational Safety and Health Act, 29 U.S.C. §§ 651–678. Specifically, they agree that 29 CFR § 1926.500(f)(5)(ii) (1984) applies. It states that "floor opening cover[s] shall be capable of supporting the maximum intended load and so installed as to prevent accidental displacement." The hole through which Manson fell was such a "floor opening."[1] Foutch–

---

[1] The definition of a "floor opening" appears in 29 CFR § 1926.502(b):

"An opening measuring 12 inches or more in its least dimension in any floor, roof, or platform through which persons may fall."

Miller also admits that it was bound by the terms of its contract to comply with pertinent provisions of Corps of Engineers Manual EM 385–1–1, *General Safety Requirements Manual* (1977) and a pertinent provision in section 31.A.01 which reads as follows:

All floor and roof holes, skylights, and openings into which persons can accidentally walk shall be guarded by a securely anchored inclosure guard or covered with material and bracing of sufficient strength to support any load which may be imposed. Coverings for floor and roof openings shall be secured in place to prevent accidental removal or displacement.

Manson's position simply is that, because of the OSHA regulation and the safety manual provisions, Foutch–Miller was *liable* as a matter of law and the trial court should have directed a verdict accordingly.[2] We hold that the issues of negligence and proximate cause were properly submitted to the jury.

 To recover for negligence, a plaintiff must prove that the defendant was under a duty, that he violated that duty, and that a proximate causal connection existed between the defendant's conduct and the damage suffered. *Wells v. Vancouver,* 77 Wn.2d 800, 467 P.2d 292 (1970). The requisite duty can be defined by a statute or regulation which is intended to protect the plaintiff from the kind of

---

29 CFR § 1926.500(b)(1) states that: "Floor openings shall be guarded by a standard railing and toeboards or cover, as specified in paragraph (f) of this section."

The application of other regulations was argued at trial, but not on appeal. Those arguments are therefore deemed abandoned. *Seattle–First Nat'l Bank v. Shoreline Concrete Co.,* 91 Wn.2d 230, 588 P.2d 1308 (1978).

[2]Manson protected his position as to a directed verdict of liability by pre– and post–trial motions and by requested instructions. He also requested instructions covering the texts of numerous OSHA regulations and the safety manual provision, accompanied by appropriate instructions as to their effect in the jury's determination of negligence. The trial court limited its instructions along this line to the OSHA regulation mentioned above. Manson assigns no error here to the court's failure to give the others. Manson did not ask the court to instruct that Foutch–Miller was negligent but that proximate cause of the accident remained a jury issue.

damage suffered. *Kness v. Truck Trailer Equip. Co.*, 81 Wn.2d 251, 501 P.2d 285 (1972). Applicable OSHA regulations can create such a duty in an employer at a construction site. *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 582 P.2d 500 (1978). Whether such a regulation is applicable at all is a question of law for the court. *Ball v. Smith*, 87 Wn.2d 717, 556 P.2d 936 (1976).

Only rarely, however, is it proper to take either the question of whether a regulation was violated or the question of proximate cause from the jury.

> [A] trial court may direct a verdict on questions of negligence in only two classes of cases: (1) where the circumstances of the case are such that the standard of care is the same under all circumstances and its measure is defined by law; and (2) where the facts are undisputed and only one reasonable inference can be drawn therefrom.

*Van Cleve v. Betts*, 16 Wn. App. 748, 751, 559 P.2d 1006 (1977). Even where negligence is clear, proximate cause is still a jury question unless the facts and inferences concerning proximate cause are not subject to dispute. *Van Cleve*, 16 Wn. App. at 753. Although certain cases may be amenable to such treatment (*e.g., Solomonson v. Milling*, 34 Wn. App. 687, 664 P.2d 1271 (1983)), this is not one.

No one would suggest that Manson fell through the hole intentionally. However, on these facts reasonable minds could certainly differ as to whether the plywood cover was accidentally displaced or removed, and whether Villwock's measures were sufficient to secure it against accidental displacement or removal.

Manson attempts to get around this problem by arguing that we should apply to this situation the definition of "accident" used in some cases interpreting insurance policies (*e.g.*, "unusual, unexpected, or unforeseen events following an intentional act, provided that those events are not normally effected", *McKinnon v. Republic Nat'l Life Ins. Co.*, 25 Wn. App. 854, 857, 610 P.2d 944 (1980)). Thus he would have us hold Foutch–Miller liable because, even

though Manson removed the cover intentionally, the fall was unforeseeable and therefore accidental. We are not persuaded.

■■ The regulation and safety manual provisions both speak to accidental displacement or removal, not to an accidental fall. The cases Manson cites have to do only with the interpretation of insurance policy language (*see McKinnon*, 25 Wn. App. at 861 (Reed, C.J., concurring)). They do not apply to the interpretation of statutes or regulations. "Accident" is not defined in the OSHA regulation or the safety manual. It must be given its dictionary definition. *State ex rel. Graham v. Northshore Sch. Dist. 417*, 99 Wn.2d 232, 662 P.2d 38 (1983). *Webster's Third New International Dictionary* (1969) defines it as "an event or condition occurring by chance . . ." Clearly it was for the jury to decide whether the plywood, under the circumstances existing at this jobsite, was installed so as to prevent displacement or removal by chance, and whether displacement or removal occurred by chance. *See Kelley v. Howard S. Wright Constr. Co., supra; Short v. Hoge*, 58 Wn.2d 50, 360 P.2d 565 (1961).

We agree—and so does Foutch–Miller—with Manson's contention that Foutch–Miller's contract imposed upon it a duty of care measured by the safety manual provision. "[A]n affirmative duty assumed by contract may create a liability to persons not party to the contract, where failure to properly perform the duty results in injury to them." *Kelley*, 90 Wn.2d at 334. A contractual duty to comply with safety provisions does not necessarily make Foutch–Miller an insurer of Manson's safety, however, and such contract terms must be interpreted reasonably. *Leija v. Materne Bros.*, 34 Wn. App. 825, 664 P.2d 527 (1983). For the reasons already stated, it was for the jury to decide whether the contract had been violated. However, Manson's failure to assign error to the trial court's refusal to instruct on the safety manual provision forecloses further consideration of the issue here. RAP 10.3(a)(3), (g).

904

Affirmed.

PETRIE, J., and HICKS, J. Pro Tem., concur.