31 So.2d 213

SIRACUSA v. PRUDENTIAL INS. CO. OF AMERICA.

No. 38227.

May 26, 1947.

Walter E. Adolph and Solomon S. Goldman, both of New Orleans, for defendant and appellant.

Flanagan & Landry, of New Orleans, for plaintiff and appellee.

FOURNET, Justice.

This is a suit to recover the sum of $5,000 under the "Accidental Death Benefit" clause of an insurance policy issued by the Prudential Insurance Company of America on the life of Thomas Siracusa, and it is now before us on an appeal taken by the company from a judgment in favor of Mrs. Rosaria Siracusa, the widow of the deceased, individually and on behalf of her minor son, Gaetano Siracusa, the beneficiaries under the policy.

The insured's decapitated and badly decomposed body was found 52 days after his disappearance lying in a woody section on the edge of the lake side of Downman Road, a mile from the Gentilly Sub-division of New Orleans. His feet were on the shoulder of the road with the remainder of his torso pointed away from the road and in a slough. His head was some 10 or 15 feet away, further in the woods. After holding an autopsy the coroner issued a certificate wherein, under the heading "Certificate of Death," it is stated: "Two linear fractures of nasal bone, left side, extending the full length of bone, there being about ¼" of bone between the two lines of fracture; cause of death undetermined—under investigation."

After identification by the insured's dentures and due proof of his death was made in accordance with the terms of the policy, the plaintiff was paid the face amount of the policy. She instituted this suit when the company refused to pay her an ad-

ditional $5,000 under the accidental death benefit clause.

On the face of the policy it is provided that an accidental death benefit of $5,000 will be paid "in addition to the Face Amount of Insurance * * * in event of death by accidental means as defined in the clause headed 'Provisions as to Accidental Death Benefit,'" the pertinent part of such clause providing that the $5,000 "shall be payable * * * immediately upon receipt of due proof that the death of the Insured occurred * * * as a result, directly and independently of all other causes, of bodily injuries, *effected solely through external, violent, and accidental means,* of which, except in case of drowning or of internal injuries revealed by an autopsy, there is a visible contusion or wound on the exterior of the body, and that such death occurred within ninety days of the accident, provided, however, that no Accidental Death Benefit shall be payable if the death of the Insured resulted from suicide—whether sane or insane; from having been engaged in military or naval service in time of war; or in submarine operations or in aviation or aeronautics, as a passenger or otherwise; or from a state of war, riot or insurrection; or directly or indirectly from bodily or mental infirmity or disease in any form." (Italics ours.)

█ As pointed out by the appellant in brief, "The defense is strictly confined to a denial of death 'as a result of bodily in-

juries.' To recover Plaintiffs must allege and must prove by a preponderance of the evidence that insured's death was the 'result of bodily injuries' * * * thereby negativing death by disease." In other words, as stated in another part of the brief: "To sustain that burden Plaintiffs must disprove death from disease, otherwise they will not have proven death from injuries."

█ While there is no direct evidence as to the cause of the insured's death in this case, all of the evidence on this point being circumstantial, the coroner did testify it was possible the fractures to the nasal bone could have caused death although it was impossible for him to tell whether or not this was so from the condition of the body. The question for our determination, therefore, is whether or not the evidence is sufficient to show that the insured died as the result of external violent and accidental means within the meaning and contempla-tion of the contract between the parties as reflected by the policy of insurance.

We have been unable to find any case on all fours with this one and the cases cited by counsel for the appellant from other jurisdictions are not pertinent from a factual standpoint. Consequently, they are not controlling and, as a matter of fact, are of no assistance to us in the decision of this case. Each case of this kind must be determined according to its own particular facts.

Counsel for the insurer say in brief there are only four possible causes from which the insured could have died: (1) suicide, (2) felonious attack, (3) accidental injury, and (4) disease, and that since these are narrowed down to the last two because there are presumptions against suicide and murder, the plaintiff must prove the insured died from either accidental injury or disease, for the court "cannot be called upon to hazard a guess between death by disease and by accident, where death from either cause is equally probable," and that if the plaintiff does not prove death resulted from either of these means, her suit should be dismissed as of non-suit.

While the note of evidence in this case is very meager, we think the facts and circumstances surrounding the death of the insured exclude any hypothesis or theory that his death resulted from suicide or disease. There is not a fact nor a circumstance in the evidence from which an inference can fairly be drawn that the insured died from either of these causes. On the contrary, we think the only reasonable conclusion that can be drawn from the evidence is that the deceased met his death as the result of foul play. Every fact and circumstance adduced during the trial of the case supports this conclusion.

On the night of his disappearance Siracusa left his wife and son at the neighborhood show, where he had driven them, not saying where he was going. When his wife did not hear from him as she custom-arily did when he was unable to return home at an early hour, she became apprehensive and, the next morning, called the police. Although police officers made a very thorough search for him in the City of New Orleans, no trace was found of either him or his automobile. The car was found some 11 days after his disappearance parked in the 800 block of Elysian Fields Avenue, three miles from the spot where his body was subsequently found. The car was in gear and the keys were in the ignition, though not turned on; it was in good condition. Siracusa was at that time 40 years old, in good health, and apparently devoted to his wife and son. He was under joint indictment for murder with one Salvadore Vitalie but was out on bond. When his body was found it had obviously only recently been dragged to the roadside from a spot some 35 feet further in the woods, where it had lain for a long time, as the indications of its decomposition remaining on the ground at that spot clearly demonstrated. The detective called to the scene expressed the opinion that the body had first been dragged into the woods from the road by its feet and had there lain, feet toward the lake and away from the road, until it was again similarly dragged back to the road just prior to its discovery.

We think the location and condition in which the deceased's automobile was found when considered in respect to the spot where his body was found alone refute any probability that the deceased committed

suicide, died from natural causes, or met his death accidentally, and while we are not authorized to enter into conjectural conclusions as to what brought about his death when the probabilities are equal, we think that when the evidence not only leaves an inference of the probability of death by foul play and excludes all hypothesis or theory of death from suicide, disease, or accident, but so strongly supports the probability of death by violence, as in this case, that the cause of death is established under the rules of evidence by a preponderance of the evidence within the meaning and contemplation of the contract of insurance. In such a case the cause of death is not conjectural either as a matter of law or as a matter of fact.

■ From a mere reading of the accidental death benefit clause in this policy it is obvious that such clause was intended to apply in all cases where death resulted from accidental means, except in those cases therein specifically excluded, and that the provisions with reference to the visible contusion or wound on the exterior of the body were incorporated in this clause for the insurer's protection against claims that are based on some spurious ground.

In construing identical clauses in other jurisdictions, the courts have held that such a provision does not require that an external or visible sign of the injury shall become apparent immediately after the accident or that it shall be enduring in its nature and, if there are visible marks of the injury at the time the accident happens, recovery for death cannot be precluded because such marks became obliterated before death occurs. So, since evidence has been held admissible to show the existence of signs that have become obliterated before death, we can think of no good reason why such signs cannot be shown where they have become obliterated after death and we think it is a natural deduction and an inescapeable conclusion that where death occurs in the manner indicated by the evidence in this case visible wounds and contusions were produced about the body of the insured and to deny the beneficiaries under the contract the insured had with the insurer recovery simply because the evidence of such wounds and contusions have been obliterated by the natural processes of decomposition was, in our opinion, a possibility that was never intended nor contemplated by the parties.

■ We think the contention of the appellant that the trial judge erred in allowing 6% per annum interest instead of the legal rate in this case is correct for it is only when the insurer fails to pay the death claim *without just cause* that the court is authorized to fix the interest at the rate allowed under Act No. 17 of 1920. In this case we think, in view of the facts and circumstances and the absence, particularly, of any similar case reported in our jurisprudence, that it cannot be said the insurer was without just cause in contesting this

claim and that the provisions of Act No. 17 of 1920 should not, therefore, be invoked.

For the reasons assigned the judgment appealed from is amended by reducing the rate of interest from 6% to 5% per annum. In all other respects it is affirmed, at the cost of the appellant.