[No. 22-40355-2.    Division Two.    October 30, 1969.]

SHIRLEY ANNICE ROBINSON MARTIN, *Appellant,* v. INSURANCE
COMPANY OF NORTH AMERICA, *Respondent.*

*McCormick, Hoffman, Rees & Arnold* and *J. Kelley Arnold,* for appellant.

*Merrick, Johnson, Burgess & Hofstedt* and *F. Ross Burgess,* for respondent.

PETRIE, J.—Plaintiff seeks to recover as beneficiary under an accident policy issued by defendant covering her husband as the named insured.

After a jury verdict in her favor, the trial court entered judgment in favor of defendant, non obstante veredicto. Plaintiff appeals, assigning error to the entry of the judgment, non obstante veredicto, and also to one of the instructions submitted to the jury.

At the outset, therefore, we are confronted with the rule of construction as clearly enunciated in *Grange v. Finlay,* 58 Wn.2d 528, 529, 364 P.2d 234 (1961):

> Such a motion involves no element of discretion and will not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from evidence sufficient to sustain the verdict. In ruling on a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party against whom the motion is made, and all material evidence favorable to the contention of the party benefited by the verdict must be taken as true. If there is substantial evidence supporting the verdict of the jury, as distinguished from a mere scintilla of evidence, the verdict must stand. By "substantial evidence" is meant that character of evidence which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed.

As stated by the Supreme Court in *Helman v. Sacred Heart Hosp.,* 62 Wn.2d 136, 149, 381 P.2d 605 (1963):

> To add to or detract from the foregoing expression at this time would, we think, render cloudy that which ought to be clear.

For our purposes, the insuring agreement in the policy provides:

Company hereby insures the person named . . . against loss resulting directly and independently of all other causes from bodily injuries caused by an accident.

The policy contains no definition of the term "accident". Both parties accepted the trial court's instruction No. 7, defining the term "accidental" as follows:

The term "accidental" is used in the policy in its ordinary, popular sense, as meaning "happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected"; that if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means. However, death alone is not proof of death by accident.

Note that while the instruction describes the concept of "accidental means", it does not require that the jury limit its understanding of an accident only to such as result through accidental means.

This instruction unchallenged, distinguishes the case at bar from the many cases previously decided in which proof of loss is required "as a result, directly and independently of all other causes, of bodily injuries sustained through accidental means", or as sometimes stated, "as a result, directly and independently of all other causes, of bodily injuries sustained through external, violent and accidental means". *See Evans v. Metropolitan Life Ins. Co.*, 26 Wn.2d 594, 174 P.2d 961 (1946); *Zinn v. Equitable Life Ins. Co. of Iowa*, 6 Wn.2d 379, 107 P.2d 921 (1940).

The record reveals that plaintiff has neither seen nor heard from her then husband, Wagner M. Robinson, Jr., since the evening of November 12, 1965, when he left home to join several companions to hunt elk in the American River Ridge—Bumping Lake areas of Yakima County. The record also reveals that Mr. Robinson, age 28, with no apparent family or financial problems, in good physical condition, did join his hunting companions at the designated area, and was last seen alive by one of them at 9 a.m. November 13, 1965, at the 3,000-foot level, without the aid

of a compass, inquiring as to directions under inclement weather conditions (snow on the ground, fog obscuring vision—and rain the following evening) on a steep and heavily wooded mountainside. An organized search on foot —covering approximately 85 per cent of the southeast side of American River Ridge and approximately 10 per cent of the more rugged and impassable northwest side of the ridge—conducted by several hundred persons during the next 8-day period under improved weather conditions failed to reveal any trace of Mr. Robinson, his clothing or his hunting equipment. Subsequent intermittent searches by much smaller groups also turned out to be fruitless.

The ultimate fact which plaintiff had the burden of proving was the accidental death of Wagner M. Robinson, Jr. Because his body has never been found, such proof was necessarily limited to circumstantial evidence. Defendant contends that because of the two-fold nature of the ultimate fact—both of which are dependent upon circumstantial evidence—the jury was first asked to infer death from the proven facts and thereafter to infer the manner of death— and that this process constitutes "the piling of inferences upon inferences". If this process constituted plaintiff's logical development of the ultimate fact, we would be obliged to affirm the judgment. However, we do not so view plaintiff's proof. An inference is a logical conclusion or deduction from an established fact. Its characterization as a "necessary" or a "conflicting" inference is dependent upon the degree of certitude of the logical implication. *Thompson v. Ezzell*, 61 Wn.2d 685, 379 P.2d 983 (1963). A jury will not be permitted to extrapolate conjecturally beyond a legal conclusion which is itself arrived at circumstantially by inference from a proven fact. *Sortland v. Sandwick*, 63 Wn.2d 207, 386 P.2d 130 (1963); *Prentice Packing & Storage Co. v. United Pac. Ins. Co.*, 5 Wn.2d 144, 106 P.2d 314 (1940). But, a given set of facts may radially project two (or more) separate inferences. In such event, one inferential conclusion is not pyramided upon another; each is drawn independently from the same evidence. *Williams v.*

*Department of Labor & Indus.,* 56 Wn.2d 127, 351 P.2d 414 (1960). *See also Gero v. John Hancock Mut. Life Ins. Co.,* 111 Vt. 462, 18 A.2d 154 (1941).

Do plaintiff's proven facts radially project the accidental death of her then husband on or about November 13, 1965? Prior to answering that question we deem it necessary to dispose of her assignment of error challenging the court's instruction No. 10, which reads as follows:

> If you find that death was occasioned only through an exposure to the elements then plaintiff has not sustained a burden of proof and your verdict must be for the defendant.

The thrust of this instruction is that death caused solely by exposure to the elements, even though such exposure be unavoidable, would not constitute an accidental death under the terms of the policy. We can hardly imagine, under the law of this case, a more fortuitious event, a happening more by chance than design, than becoming inextricably lost—and therefore *unavoidably* exposed to the elements. When one is so unavoidably placed in a position of peril in a wilderness to the extent that before reaching civilization the forces of nature overcome his most basic instinct—self-preservation—to the extent that death results, he has surely sustained bodily injuries caused by an accident in the popular or dictionary sense of these words.

We have explored this assignment of error, not because it may have created any confusion in the minds of the jurors, but rather because the implications inherent in the instruction quite apparently played a considerable role in prompting the trial court to grant defendant's motion for judgment non obstante veredicto.

In granting defendant's motion for judgment non obstante veredicto, the trial court declared:

> [I]t seems to me that there are inferences on both sides—reasonable inferences on both sides—of equal weight that Mr. Robinson could have come to his death by reason of an accident; the theory that he also could have died from exposure; he could have gone in some

place and laid down and froze to death. The trails were not very far from a road. He could have gone down a trail and gone to a road and left the premises.

■ We find it difficult to infer that Mr. Robinson abandoned his family by (1) finding his way out of the perilous situation he was in on November 13, 1965, and (2) deliberately failing to return home. Very little, if anything, in the record suggests such an inference. Rather, we find strong circumstances pointing either toward death by accident in the technical manner viewed by the trial court or by accidental death due to unavoidable exposure to the elements. In that sense, we cannot agree with the eminently learned trial court that circumstances proved show equal support to opposing conclusions. It is not our function, however, to weigh the evidence. Rather, it is our function only to ascertain whether the evidence, considered in the light most favorable toward plaintiff affords room for men of reasonable minds to conclude that there is a greater probability that the ultimate fact did happen than that it did not happen. This, we do find under the law of the case and the evidence in the record. Accordingly, defendant's motion for judgment, non obstante veredicto should not have been granted. *Helman v. Sacred Heart Hosp., supra.*

The judgment is reversed with instruction to reinstate the verdict of the jury and to enter judgment thereon.

ARMSTRONG, C. J., and PEARSON, J., concur.

---

Petition for rehearing denied November 19, 1969.