[No. 616-41335-1.    Division One—Panel 2.    April 26, 1971.]

CAROL STEVENS, *Respondent*, v. THE STATE OF WASHINGTON, *Appellant*.

*Slade Gorton, Attorney General,* and *Joseph S. Montecucco, Assistant,* for appellant.

*Sullivan, Redman & Winsor* and *John Sullivan,* for respondent.

SWANSON, J.—Even though she does not remember August 25, 1967,[1] Carol Stevens, on that day, was involved in three separate automobile-truck collisions occurring successively within moments of each other. It all happened on a bright sunny morning at about 8 a.m. on state Highway 18 as it approaches the westerly outskirts of the city of Auburn. Carol Stevens entered the eastbound lane of Highway 18 from the onramp and acceleration lane. Her Ford Falcon station wagon was first struck by an eastbound cement truck and then by a large grain truck traveling in the opposite direction. The third collision involved a postal vehicle following the grain truck. Miss Stevens, a minor, brought suit against the State of Washington through her guardian Evelyn Stevens, her mother, and claimed the proximate cause of the collision was the failure of the State of Washington to provide a safe acceleration lane. The defendant denied any negligence and claimed that Carol Stevens herself was negligent which was the proximate cause of her injuries. The jury returned a verdict in favor of the defendant State of Washington, but the trial court set the verdict aside and granted a new trial believing that it had erred in submitting the issue of contributory negligence to the jury. The state appeals.

The only issue presented by this appeal is the sufficiency of the appellant's evidence of respondent Stevens' alleged contributory negligence, for it is axiomatic

---

[1] Carol Stevens suffered retrograde amnesia and had no recollection whatever of any of the events of the day of the accident.

that a party is entitled to have the court instruct the jury on his theory of the case if there is substantial competent evidence to support it. *Shasky v. Burden,* 78 Wn.2d 193, 470 P.2d 544 (1970); *Hester v. Watson,* 74 Wn.2d 924, 925, 448 P.2d 320 (1968). The contributory negligence issue is generally one for the jury to determine from all the facts and circumstances of the particular case (*Bauman v. Complita,* 66 Wn.2d 496, 403 P.2d 347 (1965)), and only in rare cases is the court justified in withdrawing this question from the jury. *Baxter v. Greyhound Corp.,* 65 Wn.2d 421, 397 P.2d 857 (1964). Clearly, the issue of contributory negligence is a jury question unless the evidence is such that all reasonable minds would agree that the plaintiff had exercised the care which a reasonably prudent man would have exercised for his own safety under the circumstances. *Poston v. Mathers,* 77 Wn.2d 329, 462 P.2d 222 (1969); *Bauman v. Complita, supra.* Further, no element of discretion is involved in ruling on a motion to withdraw this issue from the jury (*Detrick v. Garretson Packing Co.,* 73 Wn.2d 804, 440 P.2d 834 (1968)), and all evidence and reasonable inferences therefrom must be interpreted in the light most favorable to the nonmoving party. *Holland v. Columbia Irr. Dist.,* 75 Wn.2d 302, 450 P.2d 488 (1969).

█ Nevertheless, the trial judge in the case at bar concluded that he had erred in submitting the issue of contributory negligence to the jury and stated his reasons in his order granting a new trial:

Although two "eyewitnesses" testified concerning certain of the events surrounding the accident, there was no direct evidence as to what plaintiff did or did not do leading up to the moment of impact, and all evidence with reference thereto was circumstantial; and this was likewise true as to the point of impact. The circumstantial evidence presented *was consistent with the defendant's theory that plaintiff was contributorily negligent; however, it was not at all inconsistent with plaintiff's theory that she was not contributorily negligent.* Accordingly, it was prejudicial error for the Court to permit the jury to speculate with reference to plaintiff's contributory negligence.

(Italics ours.) Negligence can be established by circumstantial evidence (*Hernandez v. Western Farmers Ass'n,* 76 Wn.2d 422, 456 P.2d 1020 (1969)), but it is not enough to show that the accident might have happened in such a way that the respondent could be found to be negligent without further showing that it could not reasonably have happened in any other way. The claim of negligence must rest upon evidence and not upon speculation.

> [I]f there is nothing more tangible to proceed upon than two or more conjectural theories under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred. [Citations omitted.]

*Gardner v. Seymour,* 27 Wn.2d 802, 809, 180 P.2d 564 (1947). *Accord, Schmidt v. Pioneer United Dairies,* 60 Wn.2d 271, 373 P.2d 764 (1962).

This does not mean that appellant is required to prove its case beyond a reasonable doubt (*Helman v. Sacred Heart Hosp.,* 62 Wn.2d 136, 148, 381 P.2d 605 (1963)) or to an absolute certainty.

> It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the thing in question, such as the occurrence of a fire, happened in such a way as to fix liability upon the person charged therewith than it is that it happened in a way for which a person charged would not be liable.

*Home Ins. Co. v. Northern Pac. Ry.,* 18 Wn.2d 798, 803, 140 P.2d 507, 147 A.L.R. 849 (1943). *Accord, Gardner v. Seymour, supra.* Thus, in determining whether or not the evidence presented here is sufficient to establish a prima facie case of negligence, our task is only to determine whether the evidence when viewed most favorably toward the nonmoving party, the appellant here, allows room for men of reasonable minds to conclude that there is a greater probability that the accident happened in such a way that the trier of fact could determine the respondent to be negligent than there is that it did not so happen. *Hernandez v. Western Farmers Ass'n, supra; Mason v. Turner,* 48 Wn.2d 145, 291

P.2d 1023 (1956); *Martin v. Insurance Co. of North America*, 1 Wn. App. 218, 223, 460 P.2d 682 (1969).

Or, as stated in *Gardner*, 27 Wn.2d at 808:

> The test to be applied here is whether the jury could have determined that the appellants were liable as a reasonable inference from the evidence, or whether the verdict rests on conjecture.

Considering the evidence in a light most favorable toward appellant, as we must, the primary facts tending to establish appellant's claim that the respondent Carol Stevens was contributorially negligent are as follows:

It is undisputed that Carol Stevens entered the eastbound lane of Highway 18 from the onramp and acceleration lane that parallels the eastbound lane of the highway. (See diagram.)[2] What occurred immediately prior to Carol Stevens' arrival on Highway 18 must be pieced together from the testimony of a Mrs. Doris Vormestrand who was driving a car preceding the cement truck down the hill eastbound on Highway 18, and from Mr. Olds, the driver of the cement truck. Mrs. Vormestrand said she saw a green automobile attempting to merge but slowly coming to a stop at the end of the acceleration lane. She testified:

> It was moving ahead and the car ahead of me and myself was watching whether or not it would go out into the lane of traffic ahead of him. It could go ahead of him, but

---

[2]Highway 18 runs in a generally east-west direction from the Seattle-Tacoma freeway, down through Peasley Canyon and into the city of Auburn. As it proceeds down the hill it is a 4-lane highway with two lanes in each direction. It then loses one eastbound lane and crosses on a bridge over Highway 181 which passes under in a north-south direction. Highway 18 then becomes a 2-lane highway, one eastbound and one westbound lane. Each traffic lane is only 12 feet wide. At the point where the highway becomes two lanes, it is intersected by a 14-foot-wide onramp which leads to an acceleration lane which is 500 feet long. For the first 250 feet the acceleration lane is 12 feet wide, but it gradually tapers and narrows over the last 250 feet to the point where it has fully merged into the main eastbound lane of Highway 18. At the termination of the acceleration lane, Highway 18 then continues east as a 2-lane highway for approximately 2 miles to Auburn. At the point of origin of the acceleration lane, there is an unobstructed view of Highway 18 for a distance of 2,000 feet in each direction.

not me, because there wasn't that much room—break—
between the car ahead of me and myself, and he finally
ran out of space and stopped.

end of acceleration
lane

onramp

Highway 18

Highway 181

She indicated that she crossed over the yellow line into the westbound lane to go around the stopped car at the end of the acceleration lane, even though she may not have had to do so. She estimated her speed was between 40 and 50 miles per hour as she drew opposite the acceleration lane and that the cement truck was following her a distance of from four to five truck-lengths. She said that after passing the stopped car, she immediately looked through her rear view mirror because she wondered if the truck could also maneuver around, and stated,

> The first that I saw was as a red car swinging in front of the cement truck and it was facing west near the front side of the truck's left side.

When asked on which side of the green car (stopped at the end of the acceleration lane) the cement truck and the red Falcon were, she replied,

> Well, I probably couldn't say. I just can remember what I saw in the mirror and it was just right near the green car.

When questioned by the court, she said,

> At the time I saw the red car, they were just east, you know. I would say the cement truck,—I don't say the red car, but the cement truck was just a little beyond the green car.

Alfred Olds, driver of the cement truck, testified that he was proceeding at about 40 to 50 miles per hour most of the distance down the highway except that he was going a little slower at the time of the collision. He stated he collided with a red Falcon at a point where Highway 18 is intersected by an onramp and acceleration lane. He was not asked, nor did he state specifically, where on the highway the impact occurred. But he did state that he saw a car stopped at the end of the acceleration lane and yet did not see the red Falcon station wagon until just before the collision, and then saw only the top of it. He testified that the Falcon was in contact with his truck for only an instant—a fraction of a second. He indicated further that the impact

between his truck and the Falcon was to the right front of his vehicle.

From this direct evidence the trier of fact could reasonably infer that the respondent's Falcon station wagon entered the eastbound lane of Highway 18 between Mrs. Vormestrand's car and the following cement truck which were separated by only four to five truck-lengths. Because Mrs. Vormestrand never saw the respondent's red Falcon in the acceleration lane, nor at all until after the collision, even though she watched the green car come to a slow stop at the end of the acceleration lane, one could reasonably infer that the respondent was not on the acceleration lane in the view of approaching eastbound vehicles until after Mrs. Vormestrand passed the area of the acceleration lane adjacent to Highway 18. Further, since the cement truck driver did not see the respondent in the acceleration lane either, even though he too saw the green car stopped at the end of the lane, an inference is logical that the respondent turned from the acceleration lane into the eastbound lane of travel just prior to the collision; otherwise, Mr. Olds would have seen respondent's car. Mr. Olds also testified that he saw only the top of respondent's car before the collision. This direct evidence supports the inference that the Falcon was so close to the cement truck that the driver's vision of the lower portion of respondent's car was obscured due to the height of the truck's cab.[3] These inferences are consistent with appellant's contention that respondent Stevens was in the process of attempting to merge into the eastbound lane when her car was struck by the oncoming cement truck. Mr. Olds' testimony that the right front of his truck struck the Falcon automobile, coupled with the evidence given by an expert witness to the effect that the respondent's vehicle was at a 20-degree angle when the impact occurred, supports an inferential conclusion that respondent Stevens was

---

[3]Mr. Olds described his truck as being just under 12 feet in height with a blue cab and a yellow mixer. As to visibility, he said that "standing in front of my truck, I cannot see the top of the hood and the cab part is higher than that."

turning into the eastbound lane of the highway when she was struck.

The respondent argues that this evidence also supports her contention that the collision occurred *after* she had completed a successful merger and was turning to go around the stopped vehicle at the end of the acceleration lane. Even though a given set of facts may radially project two or more separate inferences and each may be drawn independently from the same evidence (*Martin v. Insurance Co. of North America,* 1 Wn. App. 218, 221, 460 P.2d 682 (1969)), the appellant here is entitled to the most favorable view of all reasonable inferences.

Respondent's contention that the absence of debris in the area opposite the acceleration lane lends support to her theory that the collision occurred somewhere past the stopped car is not a necessary inference but, rather, a conflicting inference. No debris was found just past the end of the acceleration lane either, which is where the impact occurred according to appellant's view of the evidence. The trial judge gave his initial impression of this portion of the evidence when ruling on respondent's motion to strike the contributory negligence defense, and said:

> There is some evidence then that the impact occurred not too far back from Mrs. Vormestrand's car. It is up to the jury to determine from the testimony about how far back that was. But if it was some place east of the beginning of the acceleration lane and some place west of the end of that lane, then I think the defendant has an argument, based on the duty of seeing, and I think that there probably is enough evidence on which the State could say that the plaintiff failed to look partly and to be aware of the approaching danger.

The absence of debris can be attributed to the minimal force with which the cement truck struck the respondent's station wagon. Truck driver Olds said the respondent's vehicle was in contact with his truck for what he described as "an instant." Expert witness Smith testified that the difference in speed between the two vehicles at the moment of impact was not more than 5 miles per hour.

■ ■ Respondent further argues that because the green car at the end of the acceleration lane was not involved in the accident, the point of impact must have been farther east, but there is testimony that the respondent's Falcon, when struck on the left side at a 20-degree angle, was swung to the left and thus would have passed by the green car stopped on the right side of the highway. We also have the truck driver's testimony that his truck "held within the road," and that he later pulled it to a stop off the road. Respondent Stevens, due to the lack of direct evidence indicating where she entered the highway and the point of impact, contends that it is equally as possible and likely that she had completed a successful merger into the eastbound lane of the highway and that she was struck from the rear after she slowed to maneuver around the green car stopped at the end of the acceleration lane. Therefore, she says, appellant's proof of contributory negligence rests not upon evidence but upon conjecture only. We disagree. The evidence presented would allow room for men of reasonable minds to conclude it was more probable than not that respondent Stevens entered onto Highway 18 between the preceding Vormestrand vehicle and the following cement truck (a distance of not more than four to five truck-lengths), so as neither to leave a sufficient margin of safety nor to permit sufficient time to attain any status other than that of a disfavored driver entering an intersection.[4] Further, the jury viewing the evidence in a light most favorable to the non-moving party could reasonably conclude that respondent Stevens' conduct in attempting to merge into the traveled portion of Highway 18 between two clearly visible vehicles traveling between 40 and 50 miles per hour and separated by only four to five truck-lengths, while immediately ahead she would be required to reduce her speed in order to proceed around another car stopped at the end of the acceleration lane and extending partially into the eastbound lane, amounted to negligence

[4] See RCW 46.61.190 as to the obligation of a disfavored driver to yield the right-of-way at an intersection.

proximately causing her own injuries. The trial court gave only a general instruction on negligence and contributory negligence,[5] and no error was assigned to such instruction. Therefore, the law of the case as to negligence is based on the conduct of a reasonably prudent person under the circumstances. As stated in *Owens v. Young*, 59 Wn.2d 30, 36, 365 P.2d 774 (1961):

> Whether one's conduct meets the test of that of a reasonably prudent person, under the facts, is normally a question of fact for determination by the jury. [Citation omitted.]

The evidence presented and all reasonable inferences therefrom viewed in a light most favorable to the appellant is sufficient evidence of contributory negligence to create a question of fact as to whether or not such conduct meets the test of a reasonably prudent person under the same or similar circumstances. The trial court correctly submitted the issue of contributory negligence and so erred in granting a new trial. The trial court is directed to vacate such order and reinstate the verdict.

FARRIS, A.C.J., and JAMES, J., concur.

---

[5]The trial court gave only a general stock instruction on negligence and did not instruct in the language of RCW 46.61.190 as to the obligation of the disfavored driver to yield the right-of-way at an intersection, nor was there an instruction on the duty of a following car. No cross-appeal is taken from the court's failure to give such instructions.