628 P.2d 991

**VALLEY NATIONAL BANK OF ARIZONA, a national banking association, as Personal Representative of the Estate of Sharon G. Seay, Plaintiff-Appellant,**

v.

**J. C. PENNEY INSURANCE COMPANY, Guardsman Life Insurance Company, and Old Republic Life Insurance Company, Defendants-Appellees.**

**No. 1 CA–CIV 4713.**

Court of Appeals of Arizona,
Division 1,
Department A.

May 14, 1981.

Gust, Rosenfeld, Divelbess & Henderson by Frederick G. Gamble, Phoenix, for plaintiff-appellant.

Lewis & Roca by Paul G. Ulrich, Phoenix, for defendants-appellees.

## OPINION

WREN, Chief Judge.

At issue on this appeal from a suit brought to recover "double indemnity" insurance benefits is the propriety of a grant of summary judgment in favor of J. C. Penney Insurance Company, Guardsman Life Insurance Company and Old Republic Life Insurance Company (appellees) against the Valley National Bank of Arizona, as personal representative of the estate of Sharon G. Seay (appellant).

On June 14, 1975, Frank O. Seay, Jr., his wife Sharon G. Seay, and step-daughter, Sheri Lynn Seay, departed Phoenix, Arizona, in their travel camper for what was scheduled to be a two-week camping trip in Baja California, Mexico. When the Seays failed to return to Phoenix within that time, a search effort was conducted. The search failed to turn up any trace of the missing trio. In December of 1975, however, two persons hiking in Baja happened upon a campsite which included a makeshift shelter made from a sleeping bag, a camera with film, several fired bullet casings, and parts of a human skeleton. The skeletal remains were brought into this country and taken to the San Diego County Coroner, where they were determined to be those of Frank Seay, Jr. The coroner's report indicated that the cause of death was "undeterminable". This discovery prompted another search which again failed to reveal any sign of the travel camper or of Sharon or Sheri Seay. Their whereabouts remain unknown and they have since been declared legally dead.

At the time of his death, Frank Seay, Jr. had life insurance policies in force with appellees J. C. Penney, Guardsman and Old Republic,[1] which provided death benefits of $5,000 each for the Guardsman and Old Republic policies and $10,000 for the J. C. Penney policy. In addition, each of the policies provided for double indemnity in the event of accidental death. Appellees tendered payment of the death benefits but refused payment under the double indemnity provisions, contending that appellant had failed to provide any evidence of "accidental" death.

Appellant filed suit on November 22, 1977 to compel payment of the additional benefits, along with attorney's fees and costs. Appellees filed a motion for summary judgment, which the trial court granted on July 5, 1978. Appellant's new trial motion was denied, and appellees' motion for an award of attorney's fees pursuant to A.R.S. § 12–341.01 was granted in the amount of $5,639.60. Appellant appeals the summary judgment and award of attorney's fees. We reverse.

The double indemnity provisions of the insurance policies are activated only if the insured's death was accidental.[2] Under the terms of the J.C. Penney and Old Republic policies the insured must suffer an injury which directly results in death. Injury is defined as "bodily injury caused by an accident." In both of these policies, the insurer is accorded the right to perform an autopsy to verify that an accidental injury did in fact cause the insured's death. Seay's

---

1. Seay also had a policy of insurance with Republic National Life Insurance Company, but pursuant to agreement with appellant's counsel, Republic has not participated in the defense of this action but will abide by whatever determination is made. It is therefore not a party to this appeal.

2. The word "accidental" is not given a specific definition in any of the policies.

Guardsman policy is similar in its requirement that accidental death benefits will be paid if the insured's death is the result of accidental bodily injury independent of other causes. Under two of the policies, Guardsman and Old Republic, "due proof" is required. Further, under the Guardsman policy, the injury must be evidenced by visible damage to the exterior of the body except in the instance of drowning or internal injuries and these must be verified by an autopsy.[3]

Under the summary judgment disposition then, our seminal inquiry is: Taking the evidence and inferences presented in a light most favorable to appellant, does a genuine issue of material fact exist as to whether Seay's death was accidental? We think it is beyond question that it does.

■ The rather bizarre circumstances of Seay's death have already been set forth. It is uncontroverted that no one, not even the coroner's office in San Diego was able to resolve the fact question as to the cause of death. Both sides agree, and the law is well established, that appellant has the burden of proving that death resulted from accidental rather than natural causes, within the coverage of and as defined by the clauses of the insurance policies. As was stated in *New York Life Insurance Co. v. Greber*, 55 Ariz. 261, 100 P.2d 987 (1940):

When double indemnity is claimed for an accidental death under a policy like that involved herein, it is incumbent upon the beneficiary to establish affirmatively and by a reasonable preponderance of the evidence *that the death of the insured resulted from the specific cause of death set forth in the double indemnity clause.* (Emphasis added). *Id.* at 262, 100 P.2d at 987.

*Watkins v. Underwriters at Lloyds, London*, 107 Ariz. 56, 481 P.2d 849 (1971); *New York Life Insurance Co. v. McNeely*, 52 Ariz. 181, 79 P.2d 948 (1938); *Young v. Pacific Mutual Life Insurance Company of California*, 40 Ariz. 10, 9 P.2d 191 (1932); 21 J. Appleman, *Insurance Law and Practice* § 12142. At the summary judgment state of the proceedings, however, this burden is simply to raise a genuine issue of material fact, not to test the sufficiency of the evidence. *Mitchell v. Mitchell*, 12 N.C.App. 54, 182 S.E.2d 627 (1971). Moreover, as was noted in *Northern Contracting Company v. Allis-Chalmers Corporation*, 117 Ariz. 374, 573 P.2d 65 (1977): "Even if there is no factual dispute, where possible inferences to be drawn from the circumstances are conflicting, a summary disposition is unwarranted." *Id.* at 376, 573 P.2d at 67. *Executive Towers v. Leonard*, 7 Ariz.App. 331, 439 P.2d 303 (1968).

---

3. The Old Republic policy states in relevant part:

In this contract:
"Injury" means bodily injury caused by an *accident* resulting directly and independently of all other causes of loss covered by this Contract;

\*　\*　\*　\*　\*　\*

Examinations:
The Company shall, at its own expense, have the right and opportunity to examine the person of the Insured whose injury or sickness is the basis for a claim hereunder when and so often as it may reasonably require during the pendency of a claim hereunder and to make an autopsy in case of death where it is not forbidden by law. (Emphasis added).

The J.C. Penney policy is similar:
"Injury", wherever used in this policy, means bodily injury caused by an *accident* occurring anywhere in the world while this policy is in force.

\*　\*　\*　\*　\*　\*

The Company at its own expense shall have the right and opportunity to examine the person of the Covered Member when and as often as it may reasonably require during the pendency of a claim hereunder and to make an autopsy in case of death where it is not forbidden by law. (Emphasis added).

The Guardsman policy conveys the same requirement:
Upon receipt of notice and due proof, as required herein, that any employee, while insured for Accidental Death, Dismemberment and Loss of Sight Benefits under the Policy, shall have sustained any of the losses listed in the following Table of Losses as the direct result of *accidental* bodily injury and independently of all other causes, as evidenced by a visible contusion or wound on the exterior of the body (except in the case of drowning or internal injuries revealed by an autopsy) and the date of occurrence of such injury is not more than ninety days prior to the date such loss was sustained. (Emphasis added).

Appellees do not dispute the authorities as to multiple inferences to be drawn from undisputed evidence. Rather, they argue that the trial court correctly granted summary judgment since appellant failed to present any evidence whatsoever that Seay's death resulted from accidental rather than natural causes. They assert that the circumstances here show *equal* support for opposing conclusions, since the facts are totally inconclusive as to cause of death, and therefore a court or jury could only speculate on the question. In support of this argument they point out that the only evidence brought forward by appellant was that Frank Seay was in good health when he left for Mexico. They contend, however, that this evidence was too remote in time to be of any use, since it consisted of medical reports dated approximately three years prior to his death, and further, that such evidence would be insufficient to raise an inference in any event.

Additionally, appellees cite to various cases holding that, in the absence of evidence to the contrary, death is presumed to be the result of natural causes. *Continental Assurance Co. v. Rothell*, 227 Ga. 258, 181 S.E.2d 283 (1971), *Johnson v. Aetna Life Insurance Company*, 24 Ga.App. 431, 101 S.E. 134 (1919), *See* 21 J. Appleman, *Insurance Law and Practice*, § 12145. We have examined these authorities and find them to be inapposite to the situation here.

As in all civil or criminal cases, the burden of proving accidental death may be discharged by circumstantial evidence. Furthermore, the insurance policies do not contain any requirement that the *precise* cause of death be established by medical expertise. It is true that the Guardsman policy requires evidence of visible contusions or wounds on the exterior of the body, but we hold that this provision is non-exclusive, since it does not preclude proof of accidental death by other means. Moreover, only skeletal remains were found and visible contusions or wounds on the body could not be shown. *See* Annot. *Construction And Effect Of "Visible Sign Of Injury" And Similar Clauses In Accident Provi-*

*sion Of Insurance Policy*, 28 A.L.R.3d 413, *cf. Siracusa v. Prudential Insurance Company of America*, 211 La. 1066, 31 So.2d 213 (1947) (where evidence showed death was by foul play, inability to show contusions due to deteriorated state of body did not preclude recovery under accidental death policy provision).

Appellant, in support of its position that the evidence here clearly raises an inference of accidental death, refers us to cases from other states where circumstantial evidence was found to support a jury verdict of death by accidental means. In *Martin v. Insurance Company of North America*, 1 Wash.App. 218, 460 P.2d 682 (1969), the plaintiff's husband had embarked on a hunting trip. At that time, he was 28 years old, with no apparent family or financial problems, and in good physical condition. He was last seen alive in a rugged mountain area, under inclement weather without a compass, when he inquired as to directions. After his disappearance, an organized search on foot by several hundred persons failed to reveal any trace of him, his clothing or equipment. His body was never found. A jury found his death to have been accidental, but the court entered judgment in favor of the defendant, *non obstante veredicto*. Plaintiff appealed.

The appeals court first noted that:

The ultimate fact which plaintiff had the burden of proving was the accidental death of Wagner M. Robinson, Jr. Because his body has never been found, such proof was necessarily limited to circumstantial evidence. 1 Wash.App. at 221, 460 P.2d at 684.

The court went on to hold:

[W]e find strong circumstances pointing either toward death by accident in the technical manner viewed by the trial court or by accidental death due to unavoidable exposure to the elements. *In that sense, we cannot agree with eminently learned trial court that circumstances proved show equal support to opposing conclusions.* It is not our function, however, to weigh the evidence. Rather, it is our function only to ascertain wheth-

er the evidence, considered in the light most favorable toward plaintiff affords room for men of reasonable minds to conclude that there is a greater probability that the ultimate fact did happen than it did not happen. This, we do find under the law of the case and the evidence in the record. 1 Wash.App. at 223, 460 P.2d at 685–686. (emphasis added)

A similar disappearance case is *Englehart v. General Electric Corporation*, 11 Wash. App. 922, 527 P.2d 685 (1974), where the insured had gone fishing. In the evening his boat was observed drifting with the mooring lines fastened, the ignition key on, the throttle partially open and the gas tank empty. His body was never found. At trial the court accepted evidence that he was in good spirits, happily employed with no history of heart disease. The jury found from all the evidence that he had died from accidental causes. This finding was affirmed on appeal.

While it is true, as noted by appellees, that in both *Martin* and *Englehart* the insured was seen shortly before his disappearance and in the instant case weeks had elapsed, it is also true that a major question in the referenced cases arose as to whether the insured was actually dead or had intentionally disappeared. Here there is no question that Frank Seay is dead.

We find the language in *Martin* to be highly persuasive. In our opinion, an accidental death may likewise be reasonably inferred from the circumstances here. Viewed in the light most favorable toward appellant, we do not find these facts to show equal support for opposing conclusions. The total disappearance of the wife and step-daughter and decedent's truck during the same time interval, coupled with the scene at the skeletal remains, to us present a strong inference that Seay's death was not from natural causes. More than this the evidence need not do. A court or jury could reasonably infer from these circumstances that he had not died a natural death. *See* 10 Couch on Insurance 2d § 41:43.

The judgment and award of attorney's fees are therefore reversed and the cause remanded to superior court for further proceedings consistent with this opinion.

CONTRERAS, P. J., and FROEB, J., concur.