IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| SHALISA HAYES, individually, and as the personal representative of THE ESTATE OF BILLY RAY SHIRLEY III, and on behalf of statutory beneficiary, BILLY RAY SHIRLEY JR., | ) ) ) ) ) ) | No. 73968-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| Respondent, | ) ) | |
| v. | ) ) | |
| BILL'S TOWING AND GARAGE, INC., a Washington corporation, and THOMAS A. LOMIS and JANE DOE LOMIS, and the marital community composed thereof, | ) ) ) ) ) ) ) | |
| Appellants, | ) ) | |
| and | ) ) | |
| RICHARD E. WELCH and JANE DOE WELCH, and the marital community composed thereof; and KOLLECTED SOULS SECURITY, a Washington Sole Proprietorship owned by RICHARD WELCH, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | FILED: September 6, 2016 |

2016 SEP -6 AM 10:07
COURT OF APPEALS DIV I
STATE OF WASHINGTON

TRICKEY, J. — The issue of comparative negligence is a jury question unless the evidence is such that all reasonable minds would agree that the plaintiff had exercised the care that a reasonably prudent person would have exercised for his or her own safety under the circumstances. Lundberg v. All-Pure Chem. Co., 55 Wn. App. 181, 187, 777 P.2d 15 (1989). Here, reasonable minds could disagree about whether the decedent, Billy Ray Shirley, exercised reasonable care for his safety when he was killed while attending a party at an unauthorized after hours

club. Accordingly, the trial court erred when it did not permit the jury to consider Shirley's comparative fault in this wrongful death action. We reverse and remand for a new trial.

## FACTS

Thomas Lomis is the owner of Bill's Towing and Garage, Inc. He also owns the property in Tacoma, Washington on which this business is located. The property consists of a large lot and a two-story building. The top story of the building is approximately 3,000 square feet.

In September 2010, Lomis and Richard Welch entered into a one-year lease for the top story of the building. Lomis and Welch dispute the purpose of the rental. Lomis's brother testified that Welch rented the space for storage, to do upholstery work, and to teach his children karate. In contrast, Welch testified that he rented the space for "a social gathering and to do mechanic work on [his] motorcycles and cars."[1] Welch is the founder of a motorcycle club called the "Kollected Souls."[2] Welch maintains that he told Lomis that he planned to use the space as a Kollected Souls motorcycle club.

By December 2010, members of the community knew the space as the "After Hours Club."[3] The club was open after the normal bar hours, beginning at approximately 2:00 a.m. Shawna Randall, who frequented the club, testified that the After Hours Club was similar to other clubs. Patrons had to pay a cover charge and show identification to be admitted. The club had a dance floor, a disc jockey,

---

[1] Report of Proceedings (RP) (Dec. 12, 2013) at 471.
[2] RP (Dec. 12, 2013) at 468.
[3] RP (Dec. 11, 2013) at 359.

and sold alcohol.

On July 1, 2011, Welch vacated the property. He claims that he turned the property over to another motorcycle club called the "Global Grinders."[4] He admits that he did not tell Lomis that he was turning over his lease to this group. He also admits that he did not obtain written permission to sublet the property, as required by the lease.

Early in the morning on August 27, 2011, the Global Grinders held a party at the After Hours Club. According to Randall, who was present that morning, there were over 100 people in attendance. Among those present were Randall's teenage son, Ricky Washington, and his two friends—Gino Horsley and Shirley.

At some point that morning, a shooting broke out. Chaos erupted inside the club. While the sequence of events is unclear, witnesses reported hearing two rounds of gunshots. After the second round of gunshots, Randall discovered that Shirley had been shot. Despite her efforts to resuscitate him, Shirley died at the scene.

Following Shirley's death, Shirley's mother, Shalisa Hayes, on behalf of Shirley's estate and the statutory beneficiaries, commenced this action against Lomis and Bill's Towing and Garage, Inc. (collectively Lomis), and against Welch and Kollected Souls Security (collectively Welch). She brought claims of negligence, premises liability, and Consumer Protection Act violations, chapter 19.86 RCW. Lomis asserted Shirley's comparative negligence as an affirmative defense.

---

[4] RP (Dec. 16, 2013) at 584.

Welch subsequently filed for bankruptcy. He listed Hayes as a creditor. In February 2013, the bankruptcy court granted Welch a discharge, which included any judgment from this suit. Thereafter, Hayes sought relief from the automatic bankruptcy stay. She obtained an order from the bankruptcy court allowing her to pursue this wrongful death lawsuit to determine liability by Welch and other parties. The bankruptcy court's order stated that "no money judgment shall be entered personally against Richard and Jennifer Welch" but that creditors were permitted to seek compensation from the Welches' insurance policies.[5]

Following these bankruptcy court proceedings, Lomis moved in the superior court to exclude Welch as a party for the purpose of establishing joint and several liability. He argued that Welch should be dismissed because he was immune from liability and had no insurance. Hayes argued that judgment against Welch was proper and that the collectability of the judgment was an issue for the bankruptcy court.[6] The trial court denied the motion to dismiss Welch.

Before trial, Hayes moved to strike Lomis's affirmative defense of Shirley's comparative fault. She asserted that comparative fault was inapplicable in the context of an intentional tort, that there was no evidence that Shirley was negligent, and that Shirley acted reasonably in an emergency situation. The trial court granted this motion and struck the defense.

The case proceeded to a jury trial against Lomis and Welch on both liability and damages. Hayes argued that Lomis was liable because he failed to make the building safe and bring it up to code. She presented testimony from Lloyd Swick,

---

[5] Clerk's Papers (CP) at 547.
[6] CP at 373-74.

4

a code enforcement officer; from Randall, who was present on the morning of the shooting; and from Mark Lawless, a general contractor.

At the close of Hayes's case, Lomis moved for a directed verdict. He argued that it was purely speculative whether the building's deficiencies were a proximate cause of Shirley's death. The trial court denied this motion.

At the close of Lomis's case, Lomis moved to amend his answer to conform it to the evidence presented at trial. Specifically, he sought to include the affirmative defense of comparative fault and argue that Shirley's negligence was a proximate cause of his death. The trial court treated this as a motion for reconsideration and denied it based on failure of proof.

At the end of the trial, the court addressed jury instructions. Lomis proposed three jury instructions related to Shirley's alleged status as a trespasser. The court declined to give the three instructions, reasoning that there was no evidence that Shirley was a trespasser on the day he was killed.

The jury returned a verdict in favor of Hayes. The jury found Lomis 40 percent liable and Welch 60 percent liable. The jury awarded $70,000 to Shirley's estate, $250,000 to Hayes, and $70,000 to Shirley's father.

Following the verdict, Hayes returned to the bankruptcy court and moved to amend the prior bankruptcy order to allow judgment to be entered against Welch. The bankruptcy court granted Hayes's motion and modified its prior order to allow entry of a judgment against Welch. The order stated that Hayes could not seek to collect or recover on the judgment against Welch. It also stated that it did not permit "the co-defendants to seek to collect any recovery for contribution or

indemnity" from Welch.[7]

Thereafter, Hayes moved in the superior court for an entry of judgment consistent with the jury verdict and the amended bankruptcy order. Lomis opposed entry of the judgment. He asked the court to enter judgment that he was only severally liable for 40 percent of the total damage award.

The trial court entered judgment against all defendants, including Welch. The judgment states that "[t]he defendants are jointly and severally liable for the damages consistent with RCW 4.22.070."[8] It also states, "No collection action shall be taken against Defendant Welch consistent with the Bankruptcy Order issued on February 13, 2014."[9]

Lomis appeals.

## ANALYSIS

### Preservation of Issues

As an initial matter, Hayes asserts that none of the issues raised by Lomis are properly before this court because Lomis failed to renew his motion for judgment as a matter of law or move for a new trial. She is incorrect. No such posttrial motion is required. Washburn v. City of Federal Way, 178 Wn.2d 732, 749-52, 310 P.3d 1275 (2013). Lomis has preserved the issues before us.

### Denial of Directed Verdict

Lomis contends that the trial court erred when it denied his motion for a directed verdict based on lack of evidence establishing proximate cause. He

---

[7] CP at 599.
[8] CP at 602.
[9] CP at 602.

argues that there was no evidence that any building deficiency or alleged negligence on his part or on the part of Bill's Towing was a proximate cause of Shirley's death. Accordingly, he asserts that we should reverse and direct entry of judgment in his favor. We disagree.

"Proximate cause has two elements: cause in fact and legal causation." Moore v. Hagge, 158 Wn. App. 137, 148, 241 P.3d 787 (2010). "'Cause in fact refers to the "but for" consequences of an act—the physical connection between an act and an injury.'" Moore, 158 Wn. App. at 148 (quoting Hartley v. State, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)). "To establish cause in fact, a claimant must establish that the harm suffered would not have occurred but for an act or omission of the defendant." Joyce v. Dep't of Corr., 155 Wn.2d 306, 322, 119 P.3d 825 (2005). "There must be a direct, unbroken sequence of events that link the actions of the defendant and the injury to the plaintiff." Joyce, 155 Wn.2d at 322.

"Ordinarily, cause in fact is a question for the jury. But the court may decide this question as a matter of law if 'the causal connection is so speculative and indirect that reasonable minds could not differ.'" Moore, 158 Wn. App. at 148 (footnote omitted) (quoting Doherty v. Mun. of Metro. Seattle, 83 Wn. App. 464, 469, 921 P.2d 1098 (1996)). "'The cause of an accident may be said to be speculative when, from a consideration of all the facts, it is as likely that it happened from one cause as another.'" Moore, 158 Wn. App. at 148 (internal quotation marks omitted) (quoting Jankelson v. Sisters of Charity of House of Providence in Territory of Wash., 17 Wn.2d 631, 643, 136 P.2d 720 (1943)).

We review a motion for a directed verdict de novo. Ramey v. Knorr, 130

Wn. App. 672, 676, 124 P.3d 314 (2005). "A directed verdict is appropriate if, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party." Chaney v. Providence Health Care, 176 Wn.2d 727, 732, 295 P.3d 728 (2013). "A motion for a directed verdict admits the truth of the evidence of the non-moving party and all inferences that reasonably can be drawn therefrom." Ramey, 130 Wn. App. at 675-76. "The evidence must be considered in the light most favorable to the nonmoving party." Ramey, 130 Wn. App. at 676.

Here, the trial court properly denied the motion for a directed verdict. Viewed in the light most favorable to Hayes, the evidence is sufficient to create a jury question as to whether the building deficiencies were a proximate cause of Shirley's death.

Lawless, Hayes's expert, testified about several problems with the building's exits. For example, a double door along the south side of the building was out of compliance with the Tacoma Municipal Code, due to the fact that the door was unmarked with exiting or illumination signage and lacked panic bars. The stairway on the outside of the building was not properly maintained, and the southwest exit ramp was noncompliant with standard discharge. The ramp was slippery, steep, and did not have any rails, which impacted the ability of people to egress. Additionally, the building did not have a sufficient number of exits.

Lawless also testified about the circumstances surrounding Shirley's death. Shirley's body was found in the threshold of a door that was open. Lawless's testimony about the events on the morning of the shooting was based on his review

of various depositions and declarations, including those from Shirley's friends—Washington and Horsley.

Lawless testified that Washington had trouble exiting the building after shots were fired. According to Washington, it was very hard to open one of the doors. In addition, the walls and passageways inside the building were confusing. At one point, Washington found himself inside of a closet instead of going out the door. Washington and Horsley ultimately jumped out of windows. Lawless testified that the "lack of a panic bar contributed to Washington's inability to efficiently exit the building."[10] He also testified that if the stairway had been accessible and properly maintained, there would have been a means of escape on the side of the building from where Washington and Horsley jumped.

According to Lawless, Washington said that he could have gotten out safely if there had been adequate exits. Similarly, Horsley said that if there had been proper exits, the boys could have gotten out safely. Lawless expressly testified that this included Shirley. There was no objection to this testimony at trial, and this testimony is not challenged on appeal.

As Lawless's testimony reveals, both Washington and Horsley stated that if there had been proper exits, Shirley could have exited the building safely. Given the difficulties that Washington and Horsley experienced in exiting the building, it is a reasonable inference that Shirley had similar troubles. While the evidence in this case gives rise to competing inferences, we must view the evidence in the light most favorable to Hayes. In doing so, we conclude that the evidence supports a

---

[10] RP (Dec. 11, 2013) at 318.

reasonable inference to sustain the jury's determination that the building defects were a proximate cause of Shirley's death. The trial court properly denied the motion for a directed verdict.

### Comparative Fault

Lomis next contends that the trial court erred by not allowing the jury to allocate fault to Shirley pursuant to RCW 4.22.070. Specifically, he argues that the trial court erred when it granted Hayes's pretrial motion to strike this affirmative defense and when it denied Lomis's motion to amend his answer to include this defense and argue it to the jury. He asserts that we should remand for a new trial. We agree.

We review a trial court's ruling on a motion to strike an affirmative defense for abuse of discretion. Oltman v. Holland Am. Line USA, Inc., 163 Wn.2d 236, 244, 178 P.3d 981 (2008). We also review a trial court's denial of a motion to amend the pleadings to conform to evidence for abuse of discretion. In re Disciplinary Proceedings Against Bonet, 144 Wn.2d 502, 510, 29 P.3d 1242 (2001).

"'A trial court abuses its discretion when the ruling is manifestly unreasonable or based upon untenable grounds or reasons.'" Veit, ex rel. Nelson v. Burlington N. Santa Fe Corp., 171 Wn.2d 88, 99, 249 P.3d 607 (2011) (internal quotation marks omitted) (quoting Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010)). A trial court's discretionary ruling is unreasonable or based on untenable grounds when it is based on an error of law. Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 339, 858

P.2d 1054 (1993). We review alleged errors of law de novo. Barton v. Dep't of Transp., 178 Wn.2d 193, 202, 308 P.3d 597 (2013).

Here, Hayes moved to strike Lomis's affirmative defense of comparative fault on three bases: (1) comparative fault was inapplicable in the context of an intentional tort, (2) Shirley was not negligent, and (3) Shirley acted reasonably in an emergency situation. The trial court granted the pretrial motion to strike on the first basis. It stated, "[A]s to the comparative fault of the decedent, it's out. Plaintiff says this is an intentional tort, not a negligence case."[11]

The trial court's reasoning was erroneous. It is true that intentional acts are not included in the statutory definition of "fault" in the contributory and comparative fault statutes, and thus, they are "'inapposite to the determination of fault pursuant to RCW 4.22.070(1).'" Morgan v. Johnson, 137 Wn.2d 887, 895-96, 976 P.2d 619 (1999) (quoting Welch v. Southland Corp., 134 Wn.2d 629, 635, 952 P.2d 162 (1998)). As a result, intentional tortfeasors are not entitled to the benefit of proportionate liability, and negligent tortfeasors are not entitled to apportion liability to an intentional tortfeasor. Morgan, 137 Wn.2d at 896; Tegman v. Accident & Med. Inves., Inc., 150 Wn.2d 102, 115-16, 75 P.3d 497 (2003).

But here, no intentional torts were pleaded. Rather, Hayes only brought claims sounding in negligence. Further, Lomis did not seek to apportion fault to an intentional tortfeasor. Instead, he sought to apportion fault to Shirley based on Shirley's own negligence. This was proper. Comparative fault was not precluded, and the trial court erred when it concluded otherwise. Accordingly, the trial court

---

[11] RP (Dec. 6, 2013) at 21.

11

abused its discretion when it granted Hayes's pretrial motion to strike the affirmative defense of Shirley's comparative fault.

The trial court also abused its discretion when it denied Lomis's motion to amend his answer to include the defense of comparative fault and argue this defense to the jury. This ruling was based on the court's conclusion that there was a failure of proof.

"In order to prove contributory negligence, the defendant must show that the plaintiff had a duty to exercise reasonable care for [his or] her own safety, that [he or] she failed to exercise such care, and that this failure is a cause of [his or] her injuries." Gorman v. Pierce Cty., 176 Wn. App. 63, 87, 307 P.3d 795 (2013), review denied, 179 Wn.2d 1010, 316 P.3d 495 (2014). "'[T]he issue of contributory negligence is a jury question unless the evidence is such that all reasonable minds would agree that the plaintiff had exercised the care which a reasonably prudent [person] would have exercised for his [or her] own safety under the circumstances.'" Lundberg, 55 Wn. App. at 187 (quoting Stevens v. State, 4 Wn. App. 814, 816, 484 P.2d 467 (1971)). "[A]ll evidence and reasonable inferences must be interpreted in the light most favorable to the challenging party." Lundberg, 55 Wn. App. at 187.

In this case, reasonable minds could disagree about whether Shirley exercised the care that a reasonably prudent person would have exercised under the circumstances. The testimony in this case established that Shirley had been turned away from the premises approximately eight months prior to the shooting and that Welch had made it clear to Shirley that he was not welcome on the

12

property. It also established that on the morning of the shooting, Shirley and his friends were involved in a fight inside of the club. In addition, Randall testified that she believed she saw Shirley outside the building after the first round of gunshots, but after the second round of gunshots, she found Shirley inside the building suffering from a gunshot wound.

Based on this evidence, a jury could conclude that Shirley did not act reasonably under the circumstances. A jury could also find that this conduct was a proximate cause of Shirley's death. The court erred by not allowing the jury to consider the issue of Shirley's contributory negligence. A new trial is warranted.

Hayes argues that the emergency doctrine precludes the defense of comparative fault. Her argument is not persuasive.

In general, "[u]nder the emergency doctrine, a person who is suddenly confronted by an emergency through no negligence of his or her own and who is compelled to decide instantly how to avoid injury and who makes such a choice as a reasonably careful person placed in such a position might make, is not negligent even though it is not the wisest choice." Humes v. Fritz Cos., Inc., 125 Wn. App. 477, 494, 105 P.3d 1000 (2005). "An instruction on this doctrine is appropriate only when there are facts presented from which the trier of fact could conclude that the emergency arose through no fault of the person seeking to have the doctrine invoked." Kappelman v. Lutz, 141 Wn. App. 580, 588-89, 170 P.3d 1189 (2007).

These authorities indicate that when there are facts that an emergency arose through no fault of the person seeking to have the doctrine invoked, it is proper to instruct the jury on the emergency doctrine. Kappelman, 141 Wn. App.

at 589. But these authorities do not indicate that it is proper to preclude the defense of comparative fault altogether. Accordingly, we reject Hayes's argument.

## Scope of New Trial

Given our conclusion that a new trial is warranted, we next address the scope of the new trial. Lomis asserts that the new trial should be limited to the issue of liability. Hayes contends that the entire matter should be retried, including damages. We agree with Lomis.

"A new trial may be limited to certain issues where it clearly appears that the original issues were distinct and justice does not require resubmission of the entire case to the jury." Mina v. Boise Cascade Corp., 104 Wn.2d 696, 707, 710 P.2d 184 (1985). "If there is a possibility that the verdict was the result of a compromise, limiting retrial to certain issues is improper." Mina, 104 Wn.2d at 707. The possibility of a compromise verdict has been "largely eliminated" by the adoption of comparative negligence and the use of special verdict forms. Mina, 104 Wn.2d at 707.

In Mina, the Supreme Court determined that reversal on a liability issue did not require a retrial of damages when each party had the opportunity to present evidence on damages, the special verdict from contained separate questions related to liability and damages, and neither party argued that the amount of damages was inappropriate. 104 Wn.2d at 707.

Here, as in Mina, both parties had the opportunity to present evidence on damages, the special verdict form contained separate questions relating to liability and damages, and neither party has argued that the amount of damages was

excessive or insufficient. For these reasons, we conclude that it is proper to limit the new trial to the issue of liability.

Hayes distinguishes Mina and Bauman v. Crawford, 104 Wn.2d 241, 704 P.2d 1181 (1985), the other case relied on by Lomis, arguing that neither case contemplates "a new trial with new parties and the case being tried in a completely different fashion."[12] But neither Mina nor Bauman relied on the sameness of parties or theories to conclude that limitation of the issues was proper. Thus, these distinctions are immaterial.

In a statement of additional authorities, Hayes cites several cases for the proposition that "[o]n remand of cause for new trial because of failure to submit question of contributory negligence to jury, issue of primary negligence should also be retried where it is factual issue, since negligence and contributory negligence should be passed on by same jury."[13] Here, there is no dispute that the issue of primary negligence should also be retried. Thus, we need not address these cases any further.

## CONCLUSION

The trial court erred by not allowing the jury to consider the issue of Shirley's comparative negligence. A new trial is warranted. The new trial shall be limited to the issue of liability.

In light of our resolution of this matter, we decline to address Lomis's argument that the trial court erred when it did not give jury instructions related to Shirley's status as a trespasser. We also decline to address Lomis's argument

---

[12] Resp't Br. at 21.
[13] Resp't Supp. Auth. On Scope of Re-trial at 1.

that the trial court erred when it entered judgment against Welch, which resulted in joint and several liability, but precluded the right to contribution from Welch. The trial court can address these issues after considering the evidence presented in the new trial and the jury's allocation of fault.

We reverse and remand for further proceedings consistent with this opinion.

Trickey, ACJ

WE CONCUR:

Spearman, J.P.T.

Becker, J.